## LAZAR STERNBERG et ux.

*v.*

## DAVID WOLFF et ux. and L. STERNBERG & COMPANY, a corporation.

### [Filed November 28th, 1898.]

1. The court of chancery ought not to interfere with the business of a solvent corporation, by the appointment of a receiver, unless there is a present danger to the interests of the stockholders consisting of a serious suspension of, or interference with, the conduct of the business and a threatened depreciation of the value of the assets consequent thereupon, which may be met and remedied by a receiver. In other words, it must appear that the appointment of a receiver will serve some beneficial purpose to the stockholders.

2. It clearly appearing in this case, by the proofs, that, notwithstanding dissensions and litigations between the directors and officers, the business of the company was being conducted by the president in strict accordance with the corporate scheme, in full volume, and with the usual profit to the stockholders, and that it was not being interfered with by the litigation, and that no corporate action was necessary in order to its continuance, the appointment of a receiver, upon the application of the officer who was found by the court to be in fault, was refused.

3. The president of a corporation is, by the very nature of his office, its executive and general manager, and, while he personally performs those duties in an unexceptionable and successful manner, the mere fact that he excludes another officer of the corporation from participating in the conduct of its business, is not sufficient reason for the appointment of a receiver.

On motion for a receiver.

*Mr. Charles D. Thompson* and *Mr. Chandler W. Riker*, for the motion.

*Mr. Robert H. McCarter* and *Mr. Louis Hood, contra.*

PITNEY, V. C.

This is a contest between two sets of stockholders of a corporation for the control of the same. It was organized originally in 1892, and reorganized, with amended by-laws, August 26th, 1897.

The complainant holds in his own name one-half of the capital stock, less one share, and that is held by his wife. The defendant Rosa Wolff owns the other one-half of the stock, less one share, and that is owned by her husband, David Wolff. It thus appears that the stock is equally divided between them. The four persons just named constitute the board of directors, and, by the amended by-laws, it requires the whole to make a quorum. By the same by-laws, the complainant Lazar Sternberg is the president, with a fixed salary, and the defendant David Wolff is the secretary and treasurer, with a fixed salary, and neither can be removed nor his salary changed without the consent of all the directors, and both are authorized to draw and endorse checks, drafts, notes and other negotiable instruments.

These and other provisions in the by-laws create at once a deadlock in the affairs of the corporation, so far as taking any corporate action is concerned, unless by the consent of all persons interested.

The original bill was filed by Sternberg and wife against the defendant David Wolff alone, and the corporation, on the 15th of October, 1897, and after alleging certain irregular and improper conduct on the part of David Wolff, prayed that he might be restrained from exercising the functions of treasurer, and from doing other acts of the character complained of, and further prayed " that if necessary a receiver may be appointed to take charge of said company and manage the same pending the decision of this suit," and for other relief.

Upon the filing of the bill with a mass of affidavits, interim restraint was granted against David Wolff, and an order was made upon Wolff returnable on Monday, the 25th of October, to show cause why an injunction should not issue. On that day the parties appeared, and the defendant David Wolff presented numerous affidavits, the reading of which and those of the complainant occupied all the remaining business hours of the court. Counsel for Wolff asked for a receiver, which elicited from the court the remark that no bill or petition on Wolff's part praying such relief was before the court, and hence that none such could be granted on his application.

The further hearing of the motion was adjourned until Wednesday, the 27th, on which day the parties appeared before me, and the defendant Rosa Wolff then asked to be made a party defendant because she was a large stockholder in the concern, which motion was not opposed by the complainants, and she was duly made a party and filed an answer and cross-bill accordingly, in which she charged improper conduct on the part of the complainant Lazar Sternberg, and prayed an injunction against him in that respect, and further prayed that Sternberg and wife may specifically perform the terms of a certain written agreement entered into between the four parties, dated the 26th of August, 1897,

"and failing therein, that a receiver may be appointed to take charge of and wind up the affairs of said corporation and to divide the proceeds of the sale of the assets of said corporation among the stockholders thereafter, of the payment of all its liabilities."

The contract referred to, made on the 26th of August, was one for the reorganization of the corporation on certain terms therein specified, and which were intended to be embodied in the by-laws just referred to, but there appears a slight difference between the by-laws and the agreement.

The argument proceeded before me for two days, the complainants protesting against any interim relief being granted on the defendants' cross-bill until they had an opportunity to answer the same.

Late in the afternoon of the 28th of October, at the close of the argument, I decided that the defendant David Wolff was in fault and in the wrong, and that an injunction should issue against him according to the prayer of the bill, but that no receiver should be appointed on the prayer of the defendants' cross-bill without the consent of the complainants, and the complainants not asking for the appointment of a receiver under the prayer of their bill, and not consenting to the appointment of a receiver on the application of the defendants under their cross-bill, none was appointed. The injunction in favor of the complainants against the defendants was made upon terms that the

complainant Sternberg should be under like restraint, and an order accordingly was advised on the 6th of November.

On Monday, November 8th, upon a short notice to the defendants, the complainants having appealed from that part of the order restraining Sternberg, applied to me to suspend the operation of the injunction against him until the meeting of the court of errors and appeals, which would take place on Tuesday, the 16th of November. After hearing the parties I decided to suspend the injunction as against Sternberg, on the ground that I was in doubt as to whether those terms should have been imposed. And upon hearing the matter on the 16th of November, the court of errors and appeals, as I am informed, sustained my action and suspended the injunction against the complainants, retaining that against the defendants until the hearing of the appeals which each party had taken from the order of November 6th. This was done upon condition that both appeals should be put on the list at the present term and be argued if reached. Both the appeals were thereupon put upon the bottom of the list for argument at the present term.

On Thursday, the 18th of November, the defendants Wolff and wife presented to me their petition, with further affidavits, and asked for the appointment of a receiver under the prayer of the cross-bill, and I advised an order to show cause why such relief should not be granted, returnable on Wednesday, November 24th.

On that day the parties appeared and the complainants, the Sternbergs, filed an answer to the petition of the Wolffs, and the motion was heard on the bill, answer and cross-bill, the petition and answer and all the affidavits and exhibits.

The petitioners confined their application for a receiver to one simply to supervise and manage the affairs of the corporation pending the suit, and their prayer for an injunction to one restraining Mr. Sternberg from usurping the powers and duties of the treasurer, from drawing or signing any notes, checks or bills of exchange, and from in any way interfering with the department of the secretary and treasurer of the company, and further enjoining him from interfering with the business so far as

relates to the ladies' goods department, and that he be enjoined from hiring any employes whatever except in accordance with the by-laws of the company.

The reorganization agreement between the parties of the 26th of August, 1897, contains two clauses providing for the breaking of the deadlock by amicable proceedings. It provides that after one year from date both Sternberg and wife, on the one side, and Wolff and wife on the other, shall have the right, by notice in writing, to require the other side to purchase their capital stock, or, at the option of the party to whom such notice was given, to sell their stock to the person giving the notice. The agreement provides that upon giving such notice the parties shall immediately come to an agreement as to the value of the capital stock; that in case of non-agreement, then each shall appoint an appraiser, and the two so appointed shall appoint a third, and that the three shall proceed to make an appraisement of the stock and report to the parties in writing with convenient speed. Within one month after the receipt of such report, but not in less than two months after the receipt of the original notice, the side receiving the original notice shall elect, in writing, either to buy the stock of the party giving the notice or to sell to that party the stock at the valuation fixed; and at the end of two months after notice of such election, or earlier, at the option of the purchaser, the sale should be consummated by the transfer of the stock and payment thereof as provided.

In the answer of the Sternbergs to the petition of the Wolffs, now under consideration, the Sternbergs offer to forego that part of the contract just referred to which fixed the time of one year before any such proceedings could be had, and agree that if a notice be now given by the Wolffs, in accordance with the contract, they will consider themselves bound thereby, exactly as if the year provided in the contract had expired, and agree to carry out the provisions of the contract in reference to the purchase of the capital stock of the parties so notifying, in the manner therein provided; and the answer is signed by both Mr. and Mrs. Sternberg in their proper handwriting.

Without going into any extended discussion of the powers of

this court to interfere with the management or wind up the affairs of a solvent corporation and distribute its assets among its stockholders, I content myself with the simple remark that I can find no case—and the industry of counsel has pointed out none, with a single exception presently to be stated—in which it has been held that this court has the power to distribute all the assets and wind up a solvent corporation simply on the ground of dissensions among the stockholders. Mr. High, in his treatise on *Receivers* § *288,* pronounces against the power of the court to interfere by a receiver in any case except where provided by statute, and cites numerous authorities in support of his text; and counsel for the Sternbergs cited other authorities in the same direction.

In the case of *Fougeray* v. *Cord & Korb, 5 Dick. Ch. Rep. 185, 756,* there were three stockholders, each with an equal interest in the corporation, and two of them, the defendants, combined to defraud the third, the complainant, out of his interest in the venture. I thought it was a case where not only the wrong attempted to be perpetrated by the two against the one should be righted, but that the business of the corporation, which was dealing in real estate, was in such a state that its assets could be conveniently divided *in specie,* and the one share belonging to the complainant, the injured stockholder, might be set off to him, and thereby placed beyond the power of the other two to deal with to his disadvantage, and to that end I treated the affair as a partnership and appointed a receiver. The effect of the decree advised was not to dissolve the corporation, but merely to compel a dividend at once, *in specie,* of the property of the corporation. The assets consisted almost entirely of real estate and liens upon real estate; the only business of the corporation was dealing in real estate, and the result of the decree was, in effect, to make a partition of real estate. But the court of errors and appeals disagreed with me in that view, as I read the opinion, discharged the order for the receiver, and left the two defendants in control of the corporation, subject, however, to the restraint of this court against the renewal of their improper conduct. It is to be observed that the two defendants were both

non-residents of this state, and therefore practically beyond the reach of an injunction. In dealing with the question the court of appeals used this language : " The dismemberment of a corporation, even though it be a trading company, and the part distribution of its assets to a shareholder who is permitted to withdraw under the protection of the court, coupled with the disturbance of corporate functions incident to a receivership, are extreme powers and may not be decreed by a court of equity when the specific acts complained of are capable of redress and complete restitution, and those apprehended fall within the ordinary jurisdiction by injunction."

I do not construe that language as admitting even that this court has power to absolutely wind up and distribute the assets of a corporation simply on account of dissensions among its stockholders. I do consider it as a distinct repudiation of the idea that the remedy between partners and joint adventurers is to be applied by analogy to corporations, however closely the stock may be held, for it is to be observed that if the action had been between partners or joint owners the propriety of a partition was manifest.

If the power to wind up the affairs of a solvent corporation, and for that purpose to appoint a receiver, were conceded, the exercise of it on interlocutory application, and prior to final hearing, is one that seems to me ought not to be exercised except in a very clear case.

The power, however, to appoint a receiver for temporary purposes, simply to preserve the property until a certain object can be attained, stands on a different footing, viz., the general power of the court to preserve the subject of litigation *pendente lite*, and has been recognized by our courts in several instances but never acted upon.

The notion had its origin, so far as I can find, with Vice-Chancellor Malins, in two causes decided in 1873 and reported in *L. R. 16 Eq. Cas. 298, 303 (1873)*. In both cases there was a dispute among directors as to which should have control of a corporation, and a receiver was appointed to preserve the property

erty until a new election could be held and the proper machinery regularly set in motion.

In the first of the two cases Vice-Chancellor Malins (at *p. 301*) uses this language: "With regard to private partnerships, nothing is of more frequent occurrence than the quarrels of partners. If partners quarrel, oust each other from the management or so conduct themselves that the partnership cannot go on with advantage, it is every day's practice for the court to interfere by injunction and appoint a receiver if necessary. *With regard to public companies, I apprehend the same principle is applicable.* If a state of things exists in which the governing body are so divided that they cannot act together, and there is the same kind of feeling between the members as there is frequently in the case of private partnerships, it is clearly within the rule of this court to interfere, and it will do so."

In the next case, decided on the same day, he uses this language (*p. 305*): "This case, above all others, strongly illustrates the danger of departing from principles which ought to be well settled. Those principles are, I apprehend, what I laid down in *Featherstone* v. *Cooke*, that the court will not interfere with the internal affairs of joint stock companies unless they are in a condition in which there is no properly-constituted governing body or there are such dissensions in the governing body that it is impossible to carry on the business with advantage to the parties interested. In such a case the court will interfere, but only for a limited time and to as small an extent as possible."

His *dictum* first above stated is the only one to that effect which I can find reported.

These cases were referred to by Chancellor Runyon, in *Einstein* v. *Rosenfeld, 11 Stew. Eq. 309* (*1884*). There, as here, the complainant and defendant were each the owner of one-half of the capital stock of the corporation, and the complainant was in control of the management of it. The defendant applied to a court of law for a *mandamus* to compel the complainant to do a certain act, and the complainant filed his bill to enjoin him from prosecuting that *mandamus*, and prayed the appointment of a receiver. The bill alleged that the cor-

poration was a *quasi* partnership. At *p. 312* Chancellor Run-
yon uses this language: " The bill alleges that the corporation
is a *quasi* partnership. It appears by the answer that a part-
nership was at first agreed upon between the parties, but it was
afterwards agreed between them to form a corporation instead.
*It is entirely clear that the court, in dealing with the subject, must
treat the company as a corporation, and it cannot, in order to
acquire jurisdiction over it to dissolve it, disregard and ignore its
form and character.* It is argued, however, that, admitting
that it is a corporation, this court has, under the circumstances,
jurisdiction over it to dissolve it. The circumstance relied upon
is the existence of a disagreement between the two parties who
own all the capital stock in equal shares, by reason of which disa-
greement the corporation is deprived of a lawful governing body.
The cases cited are *Featherstone* v. *Cooke, L. R. 16 Eq. 298*,
and *Trades Auxiliary Co.* v. *Vickers, L. R. 16 Eq. 303*. In those
cases the companies were joint stock companies, and the principle
was observed that equity will only interfere in the internal affairs
of such companies where the company has no properly-consti-
tuted governing body or where there are such dissensions in the
governing body that it is impossible to carry on the business
with advantage to the parties interested, and that in such cases
the interference will be only for a limited time and to as small
an extent as possible.

" In the case in hand the business of the company is being
carried on. The complainant appears to have assumed full con-
trol of it, and seems even to have excluded the defendant there-
from, and the latter has submitted to such assumption and
exclusion. There is, therefore, no need of immediate interfer-
ence on the part of this court for the protection of the property
or business interests of the company."

And again, by the chancellor, in *Archer* v. *American Water
Works Co., 5 Dick. Ch. Rep. 33* (at *p. 52*) (*1892*), where he uses
this language: " I think it is plainly my duty to interfere by
injunction to prevent the perpetration of the wrong here threat-
ened. If the present directors of the company—and they are
all parties to this suit—continue their dissensions so that the

affairs of the company are not speedily attended to, upon a proper application I will care for the property pending determination of a suit, through the instrumentality of a receiver. Such action will be supported by precedents and authority. *Featherstone* v. *Cooke, L. R. 16 Eq. 298 ; Trades Auxiliary Co.* v. *Vickers, supra ; Einstein* v. *Rosenfeld, 11 Stew. Eq. 309.* My interference, however, by injunction and receiver will be limited to the imperative requirements of the present emergency."

And again, by Vice-Chancellor Van Fleet, in *Edison* v. *Edison United Phonograph Co., 7 Dick. Ch. Rep. 620* (at *pp. 625, 626) (1894)*: "The power of this court to appoint a receiver of a corporation, either because it has no properly-constituted governing body or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be regarded as settled, but I think it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution and only for such time and to such an extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders. As soon as a lawfully-constituted and competent governing body comes into existence, whether it is brought into existence by an adjustment of the dissensions or by the election of a new body, and such body is ready to take possession of the property of the corporation and proceed in the proper discharge of its duties, the court must lift its hand and retire."

With this exposition of the rules governing this class of applications, I take it to be clear that this court should not interfere by a receiver for purposes of preservation even, unless there is a present danger to the interests of the stockholders, consisting of a serious suspension of or interference with the conduct of the business, and a threatened depreciation of the value of the assets consequent thereupon, which may be met and remedied by a receiver. In other words, it must appear in this, as in all other such cases, that the appointment of a receiver will serve some beneficial purpose to the stockholders.

Now, the following facts sufficiently appear: The business of the corporation is a complicated one. It consists of a central store and office in Newark, and ten or more branches in different cities and towns in that neighborhood, all of which report to and receive orders from the central office. The profits of the business depend largely upon sales upon the installment plan, made naturally and almost exclusively to persons of little or no pecuniary responsibility. They pay down a sum of money in cash, and pay the balance in weekly or monthly installments, which are collected by collectors sent out from the various stores. And it was admitted before me, at the argument, that a large part of the assets of this concern consisted in these outstandings payable in installments.

It will be seen at once that the appointment of a receiver and the knowledge of it by the debtors of the corporation, would tend at once, necessarily, to very much depreciate the value of these outstandings. The idea of insolvency, actual or threatened, is so thoroughly associated in the minds of the public with the appointment of a receiver, that it is readily seen that many of the debtors of the concern would feel themselves absolved from any further obligation to pay. Then, also, we must consider the effect upon the general credit of the corporation of the appointment of a receiver; and I cannot but think it will seriously injure, if not destroy, its credit.

In the next place it appears affirmatively that the business of the corporation is being continued in its usual and regular course pending this litigation, without serious interruption and with the usual profits. In other words, that the business of the company is prosperous, and has not fallen off or been interfered with by the litigation, and that no corporate action is necessary in order to its continuance. This element at once takes the case out of the rule above referred to, and brings it within the decision of *Einstein* v. *Rosenfeld, supra.*

It further appears that Mr. Sternberg has not exercised any duties not imposed upon him, nor exceeded the authority given to him by the by-laws adopted and approved by each holder of stock of L. Sternberg & Company. The president of a corpo-

ration is, by the very nature of his office, its executive officer and general director and manager. In the absence of any restriction in the by-laws, he is the responsible head and director of the corporation, and is responsible for all the details of its business. In addition to that general authority implied by the very office which he holds, Mr. Sternberg is, by the terms of the by-laws, as we have seen, entitled equally with the nominal treasurer to act as treasurer in drawing checks, notes and making deposits, &c. It does not appear that in what he has done in this respect since this disagreement broke out, he has acted otherwise than in strict accordance with the by-laws, and, moreover, in strict accordance with what his habit had been prior to the disagreement. And it does not appear that his mode of manipulating the bank account has injured the credit of the corporation with the bank.

The only evidence in that respect is found in the affidavit of Mr. Wolff, in which he swears that at one time—date not given—one of the officers of the bank said to him that the habit of overdrawing must be stopped, or something of that kind. But Mr. Wolff was himself responsible for the original overdraft, as we have seen.

It does not appear that Mr. Sternberg, as president, has excluded Mr. Wolff from a proper share in the management of the business. It does not appear, except in a single instance presently to be noticed, that he has ever refused to listen to his suggestions with regard to any business detail, or to exclude him from his duties as treasurer, except so far as the by-laws contemplate. It is alleged that Mr. Sternberg keeps the bank account in a chronic state of overdraft, so far as the books of the corporation show, for the purpose of preventing Mr. Wolff from drawing his own salary, and so cut him off from funds to carry on this litigation. But this allegation is not borne out by the proofs. It does not appear that any salary is due to Mr. Wolff, but the contrary is inferable from the facts as found by me at the previous hearing, and as they still exist. And if complaint is made in that respect it should be by a distinct showing

that the salary is due, and that Mr. Wolff is, in substance, prevented from drawing a check to satisfy it.

It is here to be observed that the injunction against. Mr. Wolff in this respect is limited, and, in effect, only restrains him from drawing checks for debts not due.

Nor does it appear that Mr. Sternberg has improperly interfered with Mr. Wolff's functions in purchasing goods.

These matters show clearly enough that there is not the shadow of ground for the appointment of a receiver in this case. Almost all the facts were before me and thoroughly discussed on the previous application, and I then expressed myself very strongly against the appointment of a receiver, and I am still of the same opinion. I think it would be ruinous to the parties so to do.

It was argued by counsel for Mr. and Mrs. Wolff that the present situation is without precedent, and is such as to make it an exception to the general rules I have cited, in that it is impossible for the business of the corporation to proceed in the presence of the deadlock. On that topic it is proper to observe in addition to the fact that the business does proceed successfully, that the deadlock does not arise fortuitously, as in Vice-Chancellor Malins' cases, but is the direct and palpable result of the deliberate action of the parties, and must have been, and was in fact, anticipated by them, as is shown by the provision in. the contract of August 26th, 1897, already referred to. That contract was adopted as a way out of a situation most injurious to Sternberg, which was brought about by conduct on the part of Wolff of a decidedly inequitable character ; and when the contract was made it was in the nature of a compromise, and all parties must have felt that a situation such as now exists was likely to arise under it. Hence the provision for an appraisement and buying and selling by one party or the other. The Sternbergs now offer to submit to the remedy just mentioned, if Mr. and Mrs. Wolff are dissatisfied with the present situation. I think this offer has weight in the present situation, as well as the offer of October 28th, before referred to. It is to be observed that Sternberg's name is borne by this corporation, and it is

not clear that he stands upon an equal footing with Wolff on a proposition to give or take at a certain price; and I cannot say that it is unfair for Sternberg to say, as, in effect, he does say, to Wolff by the answer to the petition, that after the value of the stock is fixed by arbitration, I will tell you whether I will buy or sell.

Further, it sufficiently appears that the character, scope and extent of the business, as well as the mode of conducting it in all its details, was agreed upon and entirely settled and established at the organization of the corporation in 1892, and has never been in dispute between the parties. So that, in point of fact, no meeting of the directors ever took place prior to August, 1897, except on two occasions, and then its only business was to declare a dividend. In August, 1897, a new organization was effected, without change, however, in the character or extent of the business or the mode of conducting it. It fact, no question affecting the conduct of the business was ever brought before the board of directors for corporate action by the board in that respect.

There is no proof that Sternberg has failed to conduct the business strictly according to the plans so adopted, and, as I have already said, successfully. There is, therefore, at present, no need of, or occasion for, any corporate action, and the so-called deadlock is entirely harmless. This condition of affairs differentiates the case from those dealt with by Vice-Chancellor Malins, and spoken of by the chancellor and Vice-Chancellor Van Fleet in the cases above cited.

But if I thought otherwise on the subject of a receiver, it would be necessary for me to consider the situation of the applicants for the receiver. In the previous hearing I found Mr. Wolff altogether to blame for the present situation, for reasons there given at length and not necessary now to be repeated. In his position as treasurer and co-manager of this corporation he represents his wife, who is the actual capitalist. She assumes and approves, by her affidavits and answer, his conduct, and it is quite impossible to disassociate her from him in the whole affair.

In fact, the affidavits indicate that she is acting entirely in concert with him.

Now, it is argued, and, I think, with great force, by the counsel for the Sternbergs, that Mr. and Mrs. Wolff are not in a position to come here and ask the court to appoint a receiver based upon facts and circumstances for which they are wholly responsible. In other words, that they cannot themselves create a situation which tends to produce an injury to the business interests of the corporation, and then turn around and ask the court to appoint a receiver to cure or prevent those threatened injuries.

Upon the whole case, then, I am of the opinion that there should be no injunction or receiver, and I will advise an order dismissing the petition, with costs.