WLADYSLAW OLECHNY ET ALS. *v.* THE THADEUS KOSCIUSZKO SOCIETY OF THOMPSONVILLE, CONN., INC.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 5, 1941—decided January 14, 1942.

*Joseph P. Cooney* and *M. J. Blumenfeld,* for the appellant (defendant).

*A. S. Bill,* with whom, on the brief, were *A. C. Bill* and *Howard W. Tule,* for the appellees (plaintiffs).

AVERY, J.  The plaintiffs, claiming to be members of the defendant, a corporation without capital stock, brought this action seeking a receiver, a dissolution of the corporation, a distribution of its assets and other relief.  After a trial to the court, judgment was entered in favor of the plaintiffs, restoring them to membership, and dissolving the corporation.  The defendant has appealed.  The essential facts appearing in the finding are these: In 1921 there was organized in Thompsonville a voluntary association known as the Thadeus Kosciuszko Society composed of persons of Polish extraction, all of whom were of the Roman

Catholic faith. The purposes of this society were to promote the welfare of Poland and aid in its moral and spiritual regeneration and to conduct a social, educational and benevolent society so as to promote social intercourse, intellectual training and benefits among its members. Under the by-laws, a sick and death benefit fund was established. In 1924, a committee was appointed to prepare a charter. On September 30, 1924, a certificate of incorporation of the society as a corporation without capital stock was approved by the secretary of state. On October 12th, at a regular meeting of the society, the charter was accepted by the members. Thereafter, the voluntary association ceased to function and the corporation took over and assumed complete management of its affairs, including the collection of dues and assessments, the supervision of the sick and death benefit funds, its bank account and other assets. Prior to 1934, complete harmony and cooperation prevailed among the members. In that year, however, there was organized in Thompsonville a new church known as the Polish National church, having a ritual and ceremony patterned after that of the Roman Catholic church, but acknowledging no allegiance to the Pope. In that year, and subsequent thereto, all the plaintiffs, comprising about one-third of the membership, became members of the Polish National church while the rest of the members retained their affiliation with the Roman Catholic church. Trouble arose when the plaintiffs learned that the majority of the members were considering affiliation of the society with a central committee, organized primarily to coordinate the activities of the individual organizations having to do with charity, Polish relief and the like. Each of the two delegates of the individual societies was required to be of the Roman Catholic faith. Notwithstanding

the objection of the plaintiffs, the society voted to join the central committee by a majority of more than two-thirds. Many of the National Catholics were fined for failure to appear at religious ceremonies and, for failure to pay such fines, were suspended. Four of the plaintiffs were suspended for failure to produce their birth certificates to show that they were of eligible age when admitted to membership.

The trial court found that in imposing these fines and making these suspensions the requirements of the by-laws were not observed, and ordered the plaintiffs so suspended restored to membership. The by-laws provided that an adverse vote of five members defeated the election of an applicant for admission. As a result of the religious differences in the organization, new members could not be elected, one faction or the other always casting more than five votes against the proposed candidate. On March 12, 1939, the by-laws were amended to provide that thereafter a majority vote of members was sufficient for election into the body, and that future membership was limited to those of the Roman Catholic faith. The trial court further entered judgment dissolving the corporation on the ground that the friction and trouble between the members were of such proportions and so serious that it was impossible for the society to carry out its purposes. It appears from the finding that out of a membership of one hundred and twenty, ninety-five are opposed to dissolution and desire to continue the organization. The nature of the society is such as to require constant admission of new members. The real basis of the court's decision was that future growth and usefulness were impossible because by reason of religious differences among the members new members could not be elected. There is nothing in the finding which justifies the conclusion that the society was

unable to function in any other respect. On the contrary, it appears that officers were elected and meetings held and the chartered purposes of the corporation in other respects carried forward.

General Statutes, § 3467, appended in the footnote,[1] provides for the dissolution by the court of business corporations, and, by § 3497, its provisions are made applicable to corporations without capital stock like the plaintiff. The grounds of dissolution stated in the statute are: (1) violation of its charter powers; (2) fraud, collusion or gross mismanagement; (3) danger to its assets through attachment, litigation, or otherwise; (4) abandonment of business and neglect to wind up its affairs; (5) when its stockholders or directors have voted to discontinue its business; (6) when any good and sufficient reason exists for the dissolution of such corporation. It is not claimed that any of the conditions provided in this statute exists except the last. The statute enumerates grounds, the existence of which authorizes the interference of the court by the appointment of a receiver and dissolution of a corporation. Having enumerated particular grounds,

---

[1] Sec. 3467. RECEIVERSHIP. Whenever any corporation having a capital stock has wilfully violated its charter or exceeded its powers, or whenever there has been any fraud, collusion or gross mismanagement in the conduct or control of such corporation, or whenever its assets are in danger of waste through attachment, litigation or otherwise, or such corporation has abandoned its business and has neglected to wind up its affairs and to distribute its assets within a reasonable time, or whenever its stockholders or directors have voted to discontinue its business, or whenever any good and sufficient reason exists for the dissolution of such corporation, any stockholder or stockholders owning not less than one-tenth of its capital stock may apply to the superior court in the county wherein such corporation is located, for the dissolution of such corporation and the appointment of a receiver to wind up its affairs. Said court may, if it shall find sufficient cause, appoint one or more receivers to wind up the business of such corporation, and may at any time, for sufficient cause shown, make a decree dissolving such corporation and terminating its corporate existence.

it is to be assumed that if the legislature intended the general words at the end of the statute to be used in an unrestricted sense, the particular classes of circumstances authorizing dissolution would not have been mentioned, and we must conclude that the legislature intended by these general words to mean other causes of the same general nature as those mentioned and such as are recognized on general equitable principles to be grounds for the appointment of receivers and dissolution of corporations. *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 21, 154 Atl. 246; *Brown* v. *Congdon,* 50 Conn. 302, 309; *Wardell* v. *Killingly,* 97 Conn. 423, 433, 117 Atl. 520; Black, Interpretation of Laws (2d Ed.), § 71; Crawford, Statutory Construction, § 191. The impossibility of carrying on corporate purposes and objects is a recognized ground for dissolution of a corporation; 16 Fletcher, Cyclopedia of Corporations (Perm. Ed.), § 8081; and constitutes a "good and sufficient reason" within the language of the statute. "The intent of the lawmakers is the soul of the statute. . . ." *State ex rel. Stamford* v. *Board of Purchase and Supplies,* 111 Conn. 147, 161, 149 Atl. 410; *Bridgman* v. *Derby,* 104 Conn. 1, 8, 132 Atl. 25.

"The court, upon an application of this character, has confided to it the exercise of a sound judicial discretion. The application is addressed to it as a court of equity, and the statute recognizes the extent to which the exercise of judicial discretion must enter into any fair determination of the course of action upon such proceedings, when such language is chosen as confers a power only." *Ray* v. *Robert Price Coal Co.,* 80 Conn. 558, 560, 69 Atl. 355. "Whenever any good and sufficient reason exists, the court may decree a dissolution. What will be a good and sufficient reason must be left to the good judgment of the court.

No fixed rule can be established fitting each case, since the facts of each differ. A settled and wilful course of fraud or breach of trust, or the wilful and needless withholding of dividends on the part of the managers controlling a majority of its stock, especially when done for the purpose of compelling the minority to sell their stock, might furnish instances of a good and sufficient reason for dissolution. These examples constitute a breach of trust on the part of the officers of the corporation. And, similarly, an attempt to dispose of its assets for the enrichment of the officers at the expense of the stockholders, might furnish a good and sufficient reason for dissolution. Whether the decree shall pass or not will depend largely upon the situation and condition of the corporation, and whether the court can see that it can thereafter be carried on pursuant to its charter, and with equal justice to all of its stockholders." *Sheehy* v. *Barry*, 87 Conn. 656, 662, 89 Atl. 259. "The application for a receiver is addressed to the sound legal discretion of the court, to be exercised with due regard to the relevant statutes and rules, and such exercise is not to be disturbed lightly nor unless abuse of discretion or other material error appears. The availability and adequacy of another remedy is, as the appellant claims, a consideration to be carefully weighed in deciding whether a receiver is necessary. If it appears that some expedient action or remedy, less stringent in effect than a receivership, will meet the situation, that course should be taken." *Chatfield Co.* v. *Coffey Laundries, Inc.*, 111 Conn. 497, 501, 150 Atl. 511. Where some remedy less stringent will fully meet the needs of the case a receiver and dissolution should not be resorted to. *Massoth* v. *Central Bus Corporation*, 104 Conn. 683, 695, 134 Atl. 236.

It appears that the by-laws of the defendant have

been amended so as to provide for the election of new members by a majority vote. There is no finding of fraud, violation of its charter, mismanagement or danger to its assets. The basis of the court's decision was that because of differences of religious views the friction and trouble existing within the membership were of such proportions and so serious that it is impossible for the society to carry out its purposes. The change in the by-laws permitting the election of members by a majority vote would appear to obviate any danger of a failure of the corporation due to the impossibility of bringing in new members. The change requiring in the future that all members should be of the Roman Catholic faith was one well within the power of the corporation to make, and it would seem quite possible that in the future the religious difficulties would be minimized. The trial court held that the imposition of the penalties upon members for failing to attend services in the Roman Catholic church was improper, at least in the absence of a by-law to that effect; such a by-law would be of very doubtful validity; and it may be assumed that the members of the corporation will desist from such action in the future. It is inherent in the compact between the members of the corporation that in these and other matters the vote of the majority should control and the minority should peaceably submit. *Gold Bluff M. & L. Corporation* v. *Whitlock,* 75 Conn. 669, 672, 55 Atl. 175; *Perkins* v. *Coffin,* 84 Conn. 275, 288, 79 Atl. 1070. More than two-thirds of the members desire to continue. In view of the changes in the by-laws, it could not reasonably be found that they are not able to continue the organization so that it will function and carry on its chartered purposes. The power to dissolve a corporation of this nature should be one carefully to be exercised. *Brennan* v. *Rollman,*

151 Va. 715, 732, 145 S. E. 260. With these considerations in mind, a reading of the evidence brings us to the conclusion that the trial court could not reasonably find that the dissensions among the members of the society were such as to render it impossible to carry on its purposes. It follows that no ground exists for dissolving the defendant corporation or appointing a receiver. In so far as the named plaintiffs have been suspended from membership without compliance with the by-laws, a complete remedy is afforded them by restoring them to membership. The judgment of the trial court was erroneous in part.

There is error in part; the judgment is set aside and the case remanded with direction to enter judgment in accordance with that rendered by the trial court so far as it found that the plaintiffs are members of the corporation, but finding the other issues for the defendant.

In this opinion JENNINGS and ELLS, Js., concurred.

MALTBIE, C. J. (dissenting). In determining whether to dissolve a corporation, a trial court exercises a large discretion, "to be governed by its judgment, fairly exercised upon the facts before it, as to what, upon the whole, is wisest and best for all concerned." *Ray* v. *Robert Price Coal Co.*, 80 Conn. 558, 561, 69 Atl. 355. In this case the trial court found that religious and personal differences between two factions of the society are so tense and deep seated that it has been and will be impossible to conduct meetings of the society or religious ceremonies in a harmonious manner; that the trouble and dissension within the society have prevented and will prevent the society from carrying out the purposes for which it was formed; and that the continuation of the society under these

conditions is of no purpose or value and is and will be detrimental to the welfare of the members and the community. These findings are supported by the evidence, and a decision based upon them that the corporation should be dissolved cannot reasonably be held to have been rendered in abuse of the discretion vested in the trial court.

In this opinion BROWN, J., concurred.