JENNIE E. KRALL ET AL. *v.* WILLIAM KRALL ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued May 4—decided June 8, 1954

*George W. Crawford,* for the appellants (defendants).

*Joseph I. Sachs,* with whom, on the brief, were *Harry L. Edlin* and *Arthur S. Sachs,* for the appellees (plaintiffs).

BALDWIN, J. The plaintiff, Jennie Krall, individually and as administratrix of the estate of her deceased husband, Moses Krall, brought this action against William Krall, hereinafter described as the defendant, and the Krall Coal Company, Inc., hereinafter referred to as the corporation. She charged the defendant with a variety of acts of mismanagement and fraud in the conduct of the corporation's

business and sought an injunction, the appointment of a receiver, and the dissolution of the corporation. The trial court rendered judgment appointing a receiver, and the defendants have appealed. The question to be answered is whether there were legal grounds for the trial court's action.

The defendants claim error in the finding. They point out that the judgment file "finds the issues as set forth in the Memorandum of Decision," but that the finding contains several facts which are claimed to be inconsistent with the determination of factual issues upon which the memorandum of decision rests. Whether the finding should be corrected to conform with the facts recited in the memorandum we need not determine, since the defendants would not be advantaged if the corrections were made. Facts upon which a final judgment is predicated must appear in the judgment file. General Statutes § 7979; Practice Book §§ 191, 192; *DeSanto* v. *DeNicola,* 99 Conn. 717, 719, 122 A. 708. But compliance with this requirement should never be attempted by incorporating the memorandum of decision in the judgment file.

The finding may be stated in summary as follows: Before July 27, 1929, Moses Krall, the deceased husband of the plaintiff, and the defendant owned and operated, as a partnership, a coal, fuel oil and gasoline business in New Haven. On that day they, with the plaintiff, organized a corporation under the general laws of this state. The authorized capital of $50,000 was divided into 500 shares of common stock with a par value of $100 a share. One hundred shares were issued: one to Moses Krall, forty-nine to the plaintiff, and fifty to the defendant. The principal assets acquired by the corporation for this stock were those belonging to the partnership. From

that time until the present, the corporation has been engaged in the fuel business. By-laws adopted at the time the corporation was organized provided that its affairs should be managed by a board of not less than three nor more than five directors, who should be chosen at the annual meeting of the corporation. Officers included a president, treasurer, secretary and assistant secretary. One person could hold the offices of secretary and treasurer. The annual meeting of the stockholders was to be held each year on the first Monday of January for the election of directors and the transaction of appropriate business. Regular meetings of the directors were scheduled for the first Monday of each month. Transfer of stock required the written consent of all stockholders. The by-laws further provided that the corporate funds should be placed in a depository designated by the board of directors and that money should be withdrawn therefrom only by check signed by the treasurer and countersigned by the president. On January 1, 1932, an attempt was made, by a resolution of the corporation, to change this provision to permit either the president or the treasurer to withdraw money of the corporation on his signature alone. The resolution, however, was never formally adopted as a by-law. At the organization meeting, Moses and the defendant were appointed comanagers of the corporation's business.

Moses Krall died intestate on July 21, 1943, leaving the plaintiff and three children. From the date of the organization of the corporation until his death he was the president and the defendant was, and after Moses' death continued to be, secretary and treasurer. They and the plaintiff constituted the board of directors. The vacancies in the offices of director and president have never been filled. Im-

mediately after Moses died, the plaintiff and the defendant both signed the checks withdrawing corporate funds. Shortly thereafter, however, the bank in which the funds were deposited recognized the purported resolution of January 1, 1932, and allowed the defendant to withdraw corporate moneys on his signature alone. By arrangement, a meeting of the stockholders and directors, that is, the plaintiff and the defendant, was held on October 27, 1944, and a dividend of $40 a share was declared. There has been no other declaration of a dividend. The defendant has withdrawn checks at the rate of $125 a week for his salary, which has been his only compensation from the corporation. The plaintiff has received no payments of any nature apart from the single dividend.

Since Moses' death, the plaintiff has taken an extreme attitude of bitterness and suspicion towards the defendant. She has consistently opposed him in the operation of the business. She has charged him with fraud and mismanagement in a series of particulars unnecessary to relate, because the court found no fraud, mismanagement, waste or negligence in the conduct of corporate affairs. The business has continued as it was before Moses died and has prospered. From August 3, 1943, to the present, however, the defendant has conducted the corporation as though he personally owned all the outstanding stock. There have been no meetings of the stockholders or directors except that of October 27, 1944, and one called by the defendant for September 17, 1947, which accomplished no business except the re-election of the plaintiff and defendant as directors. The defendant has not consulted the plaintiff, as either a stockholder or a director, about corporate matters.

This action was instituted in March, 1947. At the stockholders' meeting of September 17, 1947, the defendant asked the plaintiff to consent to the transfer of one share of his stock to Simon Krall so that there might be three qualified directors. The plaintiff refused her consent. In May, 1948, the defendant requested that the shares of stock held by the plaintiff be valued by an appraiser. After a hearing, a value of $700 a share was reported by the appraiser; the defendant did not purchase the stock at this price. In February, 1950, the plaintiff demanded that a meeting of the directors be called, but the defendant refused to call one. From July, 1943, until the present, there has been continuous dissension as the result of the complete deadlock between the plaintiff and the defendant. The company has long since ceased to function as a corporation.

Upon the death of Moses Krall, the plaintiff, his widow, qualified as administratrix of his estate. The single share of stock owned by him was inventoried in his estate, and the final account indicated that it had been distributed to her. No distributors were appointed, nor was any mutual distribution made. The one share of stock was never transferred to her on the books of the corporation. However, Moses' children, who have not taken part in the dissension between the plaintiff and the defendant, have indicated a willingness for the plaintiff to have and control this single share of stock. For all practical purposes, there has been, since Moses' death, an equal division of the corporate stock between the plaintiff and the defendant.

The court concluded that there had been no fraud, waste, negligence or mismanagement in the conduct of the business but that the defendant's actions in assuming complete and exclusive control of it were

improper and illegal and that there was a total deadlock between the plaintiff and the defendant. It ordered the appointment of a permanent receiver. The defendants' main contention is that a stalemate created by disagreement between equal owners of stock in a corporation is not sufficient ground for the appointment of a receiver. They point out that the trial court failed to find any facts which bring this case within the grounds enumerated in § 5226 of the General Statutes.

It is generally true that disagreement and dissension among stockholders is not in itself sufficient ground for a corporate receivership. *Bator* v. *United Sausage Co.,* 138 Conn. 18, 22, 81 A.2d 442; *Olechny* v. *Thadeus Kosciuszko Society,* 128 Conn. 534, 542, 24 A.2d 249; *McGuire* v. *Kaysen-McGuire Co.,* 184 Minn. 553, 558, 239 N.W. 616; 19 C.J.S. 1169, 1173. The court did not find, as claimed by the plaintiff, that there had been any fraud or gross mismanagement in the affairs of the corporation or that its assets were in immediate danger of loss from waste or litigation, or that it had wilfully violated its charter or exceeded its powers. Nevertheless, the statute is broad in its purpose and intent. See *Sheehy* v. *Barry,* 87 Conn. 656, 662, 89 A. 259; *Stolman* v. *Boston Furniture Co.,* 120 Conn. 235, 243, 180 A. 507. It confers extensive equitable powers. It gives considerable latitude to the exercise of judicial discretion and does not hold the court to the stark letter of the law. *Masterton* v. *Lenox Realty Co.,* 127 Conn. 25, 33, 15 A.2d 15; *Chatfield Co.* v. *Coffey Laundries, Inc.,* 111 Conn. 497, 501, 150 A. 511. That this is so appears from the final clause of that part of the statute which sets forth the specific grounds upon which the court's action may be predicated.

The portion of § 5226 pertinent to the present inquiry reads as follows: "Whenever any corporation . . . has wilfully violated its charter or exceeded its powers, or whenever there has been any fraud, collusion or gross mismanagement in the conduct or control of such corporation, or whenever its assets are in danger of waste through attachment, litigation or otherwise, . . . or whenever any good and sufficient reason exists for the dissolution of such corporation, any stockholder or stockholders owning not less than one-tenth of its capital stock may apply to the superior court . . . for the dissolution of such corporation and the appointment of a receiver to wind up its affairs." The clause "whenever any good and sufficient reason exists" does not bestow uncircumscribed discretion. Concerning its meaning we have previously stated: "Having enumerated particular grounds, it is to be assumed that if the legislature intended the general words at the end of the statute to be used in an unrestricted sense, the particular classes of circumstances authorizing dissolution would not have been mentioned, and we must conclude that the legislature intended by these general words to mean other causes of the same general nature as those mentioned and such as are recognized on general equitable principles to be grounds for the appointment of receivers and dissolution of corporations." *Olechny* v. *Thadeus Kosciuszko Society,* 128 Conn. 534, 538, 24 A.2d 249. This principle has been incorporated in the statutes of two states which have come to our attention. See *Bowen* v. *Bowen-Romer Flour Mills Corporation,* 114 Kan. 95, 99, 217 P. 301; *Eureka Coal Co.* v. *McGowan,* 72 Colo. 402, 404, 212 P. 521. Applying the language of the statute as this court has interpreted it, we consider whether there are, in the in-

stant case, grounds for receivership and dissolution "of the same general nature" as those detailed in the law "and such as are recognized on general equitable principles."

The appointment of a receiver for a going, solvent concern is strong medicine and must be administered with caution. The application for an appointment is addressed to the sound discretion of the court, to be exercised within the limits set up by the statute, and the exercise of such discretion is not to be set aside "unless there is abuse or other material error." *Bator* v. *United Sausage Co.*, 138 Conn. 18, 21, 81 A.2d 442. "Whether the decree shall pass or not will depend largely upon the situation and condition of the corporation, and whether the court can see that it can thereafter be carried on pursuant to its charter, and with equal justice to all of its stockholders." *Sheehy* v. *Barry*, 87 Conn. 656, 662, 89 A. 259.

In the case at bar, a complete deadlock has persisted for more than a decade. The business was originally conducted as a partnership. In 1929 it was organized under the law to operate as a corporation. Yet its corporate functions have been paralyzed by the conduct of its stockholders and directors. The by-laws of the corporation and the statutes require annual meetings of the stockholders. General Statutes § 5162. They provide for the number of directors, specify what officers there shall be and stipulate as to the performance of their duties. General Statutes §§ 5165, 5167. There have been, with two exceptions in over a decade, no annual meetings of stockholders, no election or regular meeting of directors, no election of officers, no president and no complete board of directors to fulfil the requirement of the by-laws and, indeed, of the statutes. The

corporate business has not been under the control of the board of directors as the law requires. It has, instead, been under the control and direction of one man who, alone, has handled the company affairs. The legislature never intended that the corporate form, with its advantage of limited liability, should be assumed and that then the legal requirements established for corporate operation should be disregarded. These requirements were enacted for the benefit of the stockholders. Yet this plaintiff has been deprived of any voice in the management of the business or any return from its profitable operation in the form of salary or regular dividends. This condition of affairs is bound to continue indefinitely so long as the present deadlock exists. True, it is not due entirely to the fault of the defendant. It can be attributed in large part to the bitterness and suspicion of the plaintiff. The defendant, relying upon *Sternberg* v. *Wolff,* 56 N. J. Eq. 555, 569, 42 A. 1078, claims that the plaintiff should not be permitted to create a situation that tends to injure the business and then ask the court to appoint a receiver to avoid the threatened injury. On the other hand, the defendant invited the possibility of deadlock when he voluntarily entered into an arrangement whereby the control of the corporation was to be equally divided. Both are at fault.

It is fundamental to the concept of a corporation that its affairs are to be controlled by a board of directors elected by a majority of the stockholders. *Boothe* v. *Summit Coal Mining Co.,* 55 Wash. 167, 178, 104 P. 207. In the instant case, there is no such board and no such board can be elected. Consequently, there has not been and cannot be any deliberative control of the company by a board of directors. The corporation is a mere shell inhabited by

a business, conducted, in effect, as though it had been taken over by a surviving partner. A receiver is properly appointed when there are such dissensions in the governing body of a corporation, or between sets of stockholders, each owning an equal amount of stock, that the corporation ceases to function in the manner provided for by its own by-laws and in accordance with the statutes relating to corporations. *Cowin* v. *Salmon*, 248 Ala. 580, 585, 28 So. 2d 633; *Boyle* v. *Superior Court*, 176 Cal. 671, 675, 170 P. 1140; *Eureka Coal Co.* v. *McGowan*, 72 Colo. 402, 404, 212 P. 521; *Drob* v. *National Memorial Park, Inc.*, 28 Del. Ch. 254, 272, 41 A.2d 589; *Merrifield* v. *Burrows*, 153 Ill. App. 523, 530; *Brock* v. *Automobile Livery & Sales Co.*, 130 La. 404, 413, 58 So. 21; *Bowen* v. *Bowen-Romer Flour Mills Corporation*, 114 Kan. 95, 98, 217 P. 301; *In re Collins-Doan Co.*, 3 N.J. 382, 393, 70 A.2d 159; see 16 Fletcher, Corporations, § 7713; 8 Thompson, Corporations, pp. 444, 445; 13 A.L.R.2d 1260; 13 Am. Jur. 1180, § 1323, and Ann. Cum. Sup. The facts detailed in the finding furnished good and sufficient reason, within the provisions of § 5226 and recognizable equitable principles, for the appointment of a receiver. The court's discretion was wisely exercised to bring about a truce between these belligerents and a cooling-off period, in which it is hoped, as the court indicated, that the parties may come to an amicable settlement without the dissolution of the corporation. The decision of the court was in the best interests of the parties and will be to their ultimate advantage. Furthermore, it is consonant with the proposition that businesses conducted as corporations should fulfil the requirements set forth in the statutes and in their own by-laws.

The defendant claimed that the plaintiff was a

minority stockholder because the share of stock owned by her husband was never legally transferred to her. Whether she was or was not, technically, a minority stockholder is of no moment. The court found that she was for all practical purposes the beneficial owner of her deceased husband's share and that she had control of it. This circumstance was sufficient to create and continue a deadlock. The claim is without merit.

There is no error.

In this opinion the other judges concurred.