## ALBERT MARTIN *v.* MARTIN'S NEWS SERVICE, INC., ET AL.
## (4360)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 10—decision released December 16, 1986

*Leslie Byelas,* with whom were *Carolyn Comerford* and, on the brief, *Alan Neigher,* for the appellants (defendants).

*James P. Ring,* for the appellee (plaintiff).

HULL, J. The principal issue in this appeal is whether sufficient evidence was presented upon which to order the appointment of a receiver to "wind up" the affairs of the defendant corporation.

On December 13, 1983, the plaintiff, Albert Martin, brought suit against the defendants, Martin's News Service, Inc., and Raymond Martin, to have a receiver appointed to wind up the corporate activities of Martin's News Service, Inc. The plaintiff alleged that he and Raymond Martin each owned 50 percent of the stock of the defendant company and that corporate deadlock existed. The individual defendant, Raymond Martin, denied that the corporation was deadlocked and counterclaimed[1] for specific performance of a stock buy-out agreement between him and the plaintiff. On August 29, 1984, the plaintiff amended his complaint before trial to include a second count. That count asserted that there was good and sufficient reason for dissolving the corporation pursuant to General Statutes § 33-382. It also listed the following claims: that the individual defendant has depleted assets and inventory, thus reducing the value of the plaintiff's interest in the corporation; that he has withdrawn unauthorized money from the corporation; that he has not kept adequate records; and that he has caused excessive salaries to be paid to certain employees.

On October 17, 1984, the plaintiff filed an answer to the defendants' counterclaim, containing four special defenses. The plaintiff claims that an offer he made to sell his shares to the individual defendant was either expressly or impliedly revoked, and that the buy-out agreement was not enforceable. Along with his answer, the plaintiff filed a motion for appointment of a receiver. On November 9, 1984, the plaintiff revised his special defenses to substantiate further his claims

---

[1] The counterclaim was mislabeled a "cross-complaint" by the defendant.

that the offer to sell had been revoked, and that the buy-out agreement was invalid.

The court found for the plaintiff and ordered that a receiver be appointed.[2] The defendants appeal from that judgment. The court found the following facts. Martin's News Service, Inc. (Martin's), a closely held corporation consisting of two 50 percent stockholders, is a retail store in the business of selling lottery tickets, newspapers, cigarettes, and small variety items. The business was started in the 1940s by the plaintiff, Albert Martin, and his brother Steven. The defendant Raymond Martin later joined his brothers in the business. In the early 1970s, the business was incorporated, each of the three brothers owning one third of the stock in the company. Steven Martin died in 1973, at which time the plaintiff and the individual defendant bought equal amounts of their deceased brother's stock for approximately $17,500 each.

---

[2] The exact language of the judgment provides: "The court having heard the parties finds the issues for the plaintiff." Although this issue was not raised by either party, we note that neither the judgment file nor the memorandum of decision specifically indicates that judgment was entered on the counterclaim. The question then arises as to whether this appeal is from a final judgment.

In *Howarth* v. *Northcott,* 152 Conn. 460, 208 A.2d 540 (1965), the court stated that "[t]he test of a final judgment lies, not in the nature of the ruling, but in its effect in concluding the rights of the party appealing; if his rights are concluded so that further proceedings after the ruling cannot affect them, there is a final judgment. . . . While a memorandum of decision cannot be considered a record judgment, a formal judgment file is not essential for an appeal if, in fact, the court's ruling constitutes a final adjudication of the rights of a party." (Citations omitted.) Id., 462.

The present situation is analogous to that in *Howarth.* The trial court discussed the buy-out agreement at length in its memorandum. It is clear that had judgment been entered specifically on the counterclaim, it would have been entered in favor of the plaintiff. We find, therefore, that the rights of the parties were concluded; see *Clark* v. *Gibbs,* 184 Conn. 410, 415 n.9, 439 A.2d 1060 (1981); and that final judgment was in effect rendered.

After their brother's death, the plaintiff and the individual defendant had difficulty working together. Eventually, they communicated only through their accountant, and corporate meetings ceased. In August, 1975, the parties entered into a buy-out agreement,[3] designating the procedure that the parties would follow in the event one wished to divest himself of his stock.

In 1983, the plaintiff became ill and was unable to continue working in the store. The individual defendant managed the business from then on, hiring others to assist. On November 3, 1983, the plaintiff notified Raymond, in writing, "that my half of Martin's News Service, Inc. is for sale." On November 22, 1983, after having received no response from the individual defendant, the plaintiff's attorney sent a letter to him stating that "Albert feels that he would want to terminate his share of the business. Please contact me or have your lawyer contact me so that we may discuss these matters."

In August, 1984, the individual defendant began sending checks to the plaintiff, presumably in accordance with his interpretation of the buy-out agreement. The plaintiff refused to accept the checks, and never cashed any of them.

The court issued a memorandum of decision and rendered judgment for the plaintiff on the complaint, stating that there was "good and sufficient reason" to order dissolution of the corporation, and that the buy-

---

[3] The agreement contained provisions reading in relevant part as follows: "ONE: In the event one of the parties hereto determines to divest himself of his interest in said corporation by selling his stock therein, the other party hereto shall have the first right and option to purchase same at the price and upon the terms hereinafter set forth in Par. 3. . . . THREE: The purchase price for said stock shall be the book value thereof at the time of . . . resignation . . . ." A payment schedule was also included in the agreement.

out agreement was both invalid and abrogated. The court ordered that a receiver be appointed to wind up the affairs of Martin's. The defendants filed this appeal claiming that the trial court erred (1) in holding that the buy-out agreement was abrogated, (2) in holding that the buy-out agreement was invalid and unenforceable, and (3) in appointing a receiver and ordering dissolution of the corporation.

I

### THE BUY-OUT AGREEMENT

The individual defendant asserts that the buy-out agreement resolves the issues in this case, and that the agreement was a binding executory contract, supported by adequate consideration in the form of reciprocal promises. The plaintiff claims that the agreement was abrogated because the individual defendant did not respond within a reasonable time to the offer by the plaintiff to be bought out. The court stated that "even if the letter of the plaintiff of November 3 or that of his attorney, at the end of November, could be considered an offer to sell his interest in the business in accordance with the buy-out agreement, that offer was not accepted in timely fashion and the bringing of this suit effectively terminated the offer, prior to acceptance by the defendant." We agree.

"Where no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217, 227, 75 A. 2d 499 [1950]; *Santoro* v. *Mack,* 108 Conn. 683, 689, 145 A. 273 [1929]." *Benassi* v. *Harris,* 147 Conn. 451, 458, 162 A.2d 521 (1960); see also *Central New Haven Development Corporation* v. *LaCrepe, Inc.,* 177 Conn. 212, 216, 413 A.2d 840 (1979). "What is a reasonable length of time is ordinarily a question of fact for the trier. *International Tool & Gauge Co.* v. *Borg,*

145 Conn. 644, 648, 145 A.2d 750 [1958]; *Loomis* v. *Norman Printers Supply Co.*, 81 Conn. 343, 347, 71 A. 358 [1908]." *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.*, 148 Conn. 21, 26, 166 A.2d 710 (1960).

In the present case, the plaintiff notified the individual defendant on November 3, 1983, that his half of the business was for sale. The individual defendant did not respond to that offer until August of 1984, some nine months after receipt of the plaintiff's offer. Regardless of the ambiguity inherent in the term "reasonable time," this is a clear case of a lapsed offer. Nine months cannot be considered a reasonable time in this situation. We therefore conclude that the trial court's ruling that the buy-out agreement was abrogated because the plaintiff's offer was not accepted within a reasonable time is not clearly erroneous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The trial court went on to discuss the validity of the agreement itself. Although the parties themselves did not address all the issues, the trial court discussed the mutual mistake and frustration of purpose doctrines with respect to the buy-out agreement. As we have already held that the agreement was abrogated, we decline to consider the validity of the document.

## II

### DISSOLUTION OF THE CORPORATION

General Statutes § 33-382 governs the winding up of a Connecticut corporation's business. It provides in relevant part: "(a) The superior court for the judicial district where the principal office of a corporation is located, or any judge thereof, shall wind up the business and affairs of such corporation on petition of the following persons in the following cases: . . . (2) in a

proceeding by a shareholder or a director when it is established that: (i) Under the provisions of this chapter or of the certificate of incorporation or bylaws, the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock . . . . (b) Without limiting the generality of its or his authority, the superior court for the judicial district where the principal office of a corporation is located, or any judge thereof, may wind up the business and affairs of such corporation on petition of the following persons in the following cases if in his discretion such remedy is under the circumstances necessary or desirable in the interests of the parties involved or the corporation: (1) In a proceeding by holders of shares having at least one-tenth of the voting power at such time for election of directors when it is established that: (i) The corporation has wilfully violated its certificate of incorporation or exceeded its powers; (ii) there has been fraud, collusion or gross mismanagement, in the conduct or control of such corporation; (iii) the corporation's assets are in danger of waste through attachment, litigation or otherwise; (iv) the corporation has abandoned its business and neglected to wind up its affairs and to distribute its assets within a reasonable time; or (v) *any good and sufficient reason exists for the winding up of such corporation."* (Emphasis added.)

The individual defendant claims that the present situation does not fall within any of the specifically enumerated grounds for dissolution in the statute. In support of this claim, he states that the business is being run profitably and effectively, that there has been no finding of depletion of corporate assets, that business debts are being paid off, and that the liquidity of the corporation has increased.

The plaintiff cites *Krall* v. *Krall,* 141 Conn. 325, 106 A.2d 165 (1954), in support of his position. The discus-

sion in *Krall* revolves around the language of General Statutes § 33-382 (b) (1) (v).[4] That section provides that upon institution of proceedings by a 10 percent voting shareholder, the Superior Court can order dissolution of a company if "any good and sufficient reason exists." In *Krall*, the court was faced with a ten year paralysis of corporate functions during which time the business was operated profitably but under the sole direction of the defendant. Neither the plaintiff nor the board of directors had any control over corporate activities. In holding that the appointment of a receiver was proper, the court stated that "[i]t is generally true that disagreement and dissension among stockholders is not in itself sufficient ground for a corporate receivership. *Bator* v. *United Sausage Co.,* 138 Conn. 18, 22, 81 A.2d 442 [1951]; *Olechny* v. *Thadeus Kosciuszko Society,* 128 Conn. 534, 542, 24 A.2d 249 [1942] . . . . Nevertheless, the statute is broad in its purpose and intent. See *Sheehy* v. *Barry,* 87 Conn. 656, 662, 89 A. 259 [1914]; *Stolman* v. *Boston Furniture Co.,* 120 Conn. 235, 243, 180 A. 507 [1935]. It confers extensive equitable powers. It gives considerable latitude to the exercise of judicial discretion and does not hold the court to the stark letter of the law. *Masterton* v. *Lenox Realty Co.,* 127 Conn. 25, 33, 15 A.2d 15 [1940]; *Chatfield Co.* v. *Coffey Laundries, Inc.,* 111 Conn. 497, 501, 150 A. 511 [1930]." *Krall* v. *Krall,* supra, 331.

---

[4] The statute referred to in *Krall* v. *Krall,* 141 Conn. 325, 106 A.2d 165 (1954), is General Statutes (1949 Rev.) § 5226, the predecessor of General Statutes § 33-382. The relevant sections of that statute are substantially similar to its successor. The pertinent sections provide: "Whenever any corporation . . . has willfully violated its charter or exceeded its powers, or whenever there has been any fraud, collusion or gross mismanagement in the conduct or control of such corporation, or whenever its assets are in danger of waste through attachment, litigation or otherwise . . . or whenever any good and sufficient reason exists for the dissolution of such corporation, any stockholder or stockholders owning not less than one-tenth of its capital stock may apply to the superior court . . . for the dissolution of such corporation and the appointment of a receiver to wind up its affairs."

The court went on to state that "[a] receiver is properly appointed when there are such dissensions in the governing body of a corporation . . . that the corporation ceases to function in the manner provided for by its own by-laws and in accordance with the statutes relating to corporations." *Krall* v. *Krall,* supra, 335.

We find *Krall* v. *Krall,* supra, authoritative in this case. Although Martin's is being run profitably and successfully, it is being run as a sole proprietorship. The corporate functions have been paralyzed since the late 1970s, almost equal to the ten year paralysis in *Krall.* There have been no corporate meetings during this time, and there has been no input from one of the two 50 percent shareholders. This scenario is sufficient under the rule set forth in *Krall* to be "good and sufficient reason" to order appointment of a receiver pursuant to General Statutes § 33-382.[5]

The individual defendant attempts to distinguish the *Krall* case from the present one. He claims that there was no deadlock, but rather that the plaintiff voluntarily abdicated his role in corporate affairs. The plaintiff claims to the contrary, however, that he did voice his objections concerning corporate management, and offered to sell his shares of the corporate stock only after his objections went unaddressed.

The trial court made no finding regarding this conduct. It is the appellant's responsibility to secure an adequate record on appeal. *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983); *Pointina Beach Assn., Inc.* v. *Stella,* 1 Conn. App. 341, 343, 471 A.2d 970

---

[5] Although somewhat unclear from the memorandum of decision, it appears that the trial court relied on General Statutes § 33-382 (b) (1) (v) in this case. While some reference is made to the language of § 33-382 (a) (2) (i), the court did not rule pursuant to that section. As we have found that the court properly ordered dissolution under § 33-382 (b) (1) (v), we decline to address the other relevant section.

(1984). As the defendants have failed to secure a record presenting the trial court's rationale on this particular matter, we decline to consider it. *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 714, 462 A.2d 1037 (1983); *Pointina Beach Assn., Inc.* v. *Stella,* supra.

General Statutes § 33-382 leaves a great deal of discretion to the trial court. If that court considers that it is necessary or desirable that a corporation be dissolved, and "good and sufficient reason" to do so is presented, the court may order such a measure. The facts detailed in the trial court's memorandum of decision, read in light of *Krall* v. *Krall,* supra, furnish "good and sufficient reason" within the provisions of General Statutes § 33-382 and recognizable equitable principles to appoint a receiver and order dissolution of the corporation.

There is no error.

In this opinion the other judges concurred.