## MARGARET DOW ROOT *vs.* THE NEW HAVEN TRUST COMPANY, EXECUTOR, ET AL.

Third Judicial District, Bridgeport, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A new trial will not be granted for a deficient or inadequate statement of the law in a single sentence or passage of a charge, provided the instructions as a whole are correct and sufficient for the guidance of the jury in the case they have in hand.

The payee and holder of two notes who had not long to live, surrendered them to the maker upon his promise to provide for the payee's wife and son after his death, which occurred shortly thereafter. The maker then informed the payee's widow of this arrangement, and in consideration and fulfilment thereof gave her two other notes payable to her order, which she kept for several years but afterward, at the maker's request, turned over to him for safe-keeping. These notes he destroyed, without her knowledge or acquiescence. In a suit by her against his executor to recover the amount of these notes, it was *held:*—

1. That the original obligation of the maker, to provide for the widow and her son, was uncertain and indefinite in extent and amount, and in the fullest sense unliquidated.

2. That the agreement to substitute for that obligation the notes in suit, thereby reducing the obligation to a definite, certain sum, was one which it was competent for the widow and the obligor to make, and one which the law would regard as within, and not in addition to, the original indefinite obligation.

3. That the parties having thus liquidated the original obligation, it was no longer necessary for the plaintiff to prove that the amount of the notes was reasonably necessary as a provision for her, or for herself and her son.

4. That it was not open to the executor to object that in allowing the plaintiff alone to recover on these notes the son would be unpro-

Root *v.* New Haven Trust Co.

vided for, since the maker of the notes, who was fully cognizant of the situation, chose to deal with the plaintiff alone, and therefore accepted any risk there might be in so doing; and moreover equity would impose a trust in favor of the son upon the proceeds of these notes in the hands of the plaintiff, if it should appear that he had any interest therein.

5. That even if the notes were to be regarded as made and held for the benefit of the plaintiff and her son, she alone was the sole promisee and therefore the proper person to sue thereon, notwithstanding the proceeds in her hands would be impressed with a trust in favor of her son.

6. That the ground of the plaintiff's recovery, as alleged and proved, was not the failure of the defendant's testator to provide in his will for the plaintiff and her son, but the obligation evidenced by the notes given in lieu thereof, which were destroyed by the testator while in his possession for safe-keeping.

7. That the evidence, if credited by the jury, was sufficient to warrant a verdict for the plaintiff.

The credibility of evidence presents a question peculiarly within the province of the jury.

The discharge from a legal liability which is unliquidated, or of doubtful or uncertain extent, is a sufficient consideration for a new promise, especially if the latter falls within the scope and reach of the original obligation.

Argued November 9th—decided December 17th, 1909.

ACTION to recover the amount of two claims presented against the estate of a decedent, brought to the Superior Court in New Haven County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for the plaintiff for $6,683, and appeal by the defendant executor. *No error.*

The complaint contains two counts. The first seeks the recovery of $921 as the reasonable worth of services as a nurse, rendered to the defendant executor's testator, Charles F. Root, and in providing board and washing for other nurses employed for his care. The second asks to recover the amount of the unpaid balance of two notes for the principal sum of $4,500, alleged to have been made in February, 1896, by Mr. Root to the plaintiff for value, and upon which divers payments were made down to May, 1900.

The plaintiff is the widow of Arthur Root, to whom she was married in 1890, and by whom she had one child, a son, now living. The relations of Charles F. Root and Arthur were intimate, and in many respects like that between father and son. The latter was accustomed to call Charles and his wife father and mother, and Charles to call Arthur his son, although that relation did not in fact exist, and there had been no adoption. Arthur before his marriage had become a partner in a New Haven business house. He continued this business connection until 1894, when by reason of failing health he sold out, and passed the remainder of his days in the vain effort to stay the progress of his disease. He died in Colorado in 1896, aged twenty-nine. Charles died in New Haven in June, 1907, leaving a widow, who for some years had been confined in an insane asylum, an estate of $43,700, and a will executed in 1905. By this will the widow was given the life use of all the testator's estate, with power to use the principal, and the plaintiff was given the life use of one third of the remainder, with remainder over to her son. In September, 1904, Charles sold his home, and came to lodge with the plaintiff, who kept a student rooming-house. He later began to take his meals at her table. In the course of time, she, at his request, gave up taking other roomers, and he arranged with her to furnish him the privileges of the house, with board and laundry, for an agreed price. This arrangement was begun in December, 1905, and continued until his death. In March, 1907, Charles underwent a surgical operation, and from that time until his death he required the constant services of trained nurses. During this period and before, the plaintiff attended him, and during the latter period gave up much of her time to his care.

In addition to the above facts, which were conceded, the plaintiff offered evidence to show, and claimed to have shown, the following: Arthur, during the later months of his life, held three notes of Charles amounting to $5,400.

Shortly before his death he gave them back to Charles upon the latter's promise that in consideration thereof he would take care of Arthur's wife and boy. Following Arthur's death Charles informed the plaintiff of this transaction, and thereupon gave to her two notes payable to her for the sum of $4,500, and bearing interest at five per cent., saying that he had retained the balance of the former notes for the payment of advances which he had made to Arthur. She retained these notes until December, 1905, and from time to time Mr. Root gave her money and made payments for her amounting in the whole to about $900. No other payments were ever made upon them. In December, 1905, he requested her to deliver the notes to him for safe-keeping, telling her that he intended to make a new will, in which he would provide for her and make her boy his heir. In his last illness, and some three weeks before he died, she asked him concerning the notes, and if he had provided for her as he had promised, whereupon he replied with feeling that he had destroyed the notes and had not provided for her, but if God spared him until the next morning he would make it right, and make a new will. The next morning he sent for an attorney and the work of preparing a will was begun. During the progress of this work he told her that he was providing for her and her boy in it. Mr. Root died before the execution of this will was accomplished. The plaintiff never authorized, acquiesced in, or ratified the destruction of the notes. Beginning in December, 1905, Mr. Root, who for a number of years had been suffering from a permanent disorder, required from time to time the services of the plaintiff as a nurse, and they were rendered as set forth in the bill of particulars. After the operation in March, 1907, he required the services of two nurses, of whom the plaintiff acted as one. The other nurses in attendance boarded with the plaintiff, and their laundry was done by her. The charges set out in the bill of particulars are reasonable ones for the services thus rendered, and the services were ren-

dered under such circumstances as to entitle the plaintiff to compensation therefor.

The defendant offered evidence to discredit the testimony on behalf of the plaintiff as to financial and note transactions between Arthur and Charles and between Charles and the plaintiff, and especially that offered to establish the claimed holding by Arthur of the alleged notes of Charles, and the surrender of the same to Charles upon the claimed agreement between them, by evidence offered as to the resources of Arthur and the expenses which he was called upon to incur by reason of his illness and otherwise. It disputed the plaintiff's rendition of services to the extent. claimed by her, that they were so rendered as to entitle her to compensation therefor, and that they were reasonably worth the amount claimed.

The verdict was for $6,683, being an amount less than that demanded by the bill of particulars by $332.50.

*Henry C. White* and *James K. Blake,* for the appellant (defendant executor).

*Talcott H. Russell* and *George S. McLaren,* for the appellee (plaintiff).

PRENTICE, J. The errors assigned all relate either to the instructions given to the jury, or to the court's denial of a motion for a new trial for a verdict against evidence. The only passage in that part of the charge which related to the claim made under the first count, is that in which the jury were told that if they found that the plaintiff rendered to the defendant's testator services of the character described in the bill of particulars, she would be entitled to recover the value thereof, notwithstanding the fact that she did not make demand during his life; and particularly if they found that she was influenced in not making such demand by the hope that the deceased would compensate her in some better

way. This statement, taken by itself, doubtless does not embody a complete exposition of the law, or one adequate for the guidance of a jury to a correct conclusion upon a situation like that presented in this case. If it stood alone, it might well lead to a false impression that all that the plaintiff needed to prove was the rendition of the services. But it did not stand alone as the court's instruction upon this branch of the case, and it must be read and interpreted in connection with its context, and the instructions upon this subject taken as a whole. Three pages and more of the record are filled with these instructions. An examination of them shows that the law governing the plaintiff's right of recovery was laid down carefully and exhaustively. It also shows that the only purpose of the passage criticized was to indicate that the absence of a demand on her part during Mr. Root's life would not bar her right to compensation, if the other conditions, already fully stated, were found to be satisfied, and the jury, as men of ordinary intelligence, could not have derived from the charge any other impression.

Error is assigned of a passage in the charge bearing upon the issue presented under the second count, to the effect that if the facts were found to be that Arthur, the plaintiff's husband, before his death, held the valid notes of Charles F. Root, and surrendered them to the latter upon the latter's promise to provide for Arthur's wife and child after his death, and that subsequent to Arthur's death Charles, in consideration of such surrender upon such promise and in fulfilment of such promise, gave to the plaintiff the notes in suit, then there was a sufficient consideration for them, and they constituted valid legal obligations of Charles F. Root.

We understand the defendant executor to concede, as it must, that upon the facts stated, if found, Charles F. Root, upon the surrender of the notes by Arthur, came under an enforcible legal obligation to do what he promised, and that

the discharge in full or in part of this obligation would be a sufficient consideration for a promise. But it is urged, and correctly, that the new promise, to be thus supported, must be one comprehended within the limits of the original obligation. 1 Page on Contracts, p. 447, § 300; *Bailey* v. *Bussing,* 29 Conn. 1, 5. The circumstances of the present case do not disclose a violation of this principle. The obligation which originally rested upon Charles F. Root, as the court's instruction assumed, was one wholly uncertain, indefinite, and indeterminate in extent and amount. It was in the fullest sense unliquidated. *Nassoiy* v. *Tomlinson,* 148 N. Y. 326, 42 N. E. 715. When, therefore, the obligor, and the plaintiff, a beneficiary of the obligation, after Arthur's death, agreed upon something definite and certain to be given and accepted by them respectively in satisfaction or part satisfaction of the obligation, that agreement was one competent for them to make, and one which would be regarded as within and not outside of the original indefinite obligation. It has been laid down that "if a person is liable in law or equity, the discharge of such liability is a sufficient consideration to support an express promise by him to do what he is legally liable to do, or to do something accepted in lieu thereof by the person to whom such obligation is owed." 1 Page on Contracts, p. 446, § 300. See *McKee* v. *Lamon,* 159 U. S. 317, 323, 16 Sup. Ct. Rep. 11. If this principle is somewhat too broadly stated in its latter portion, it is unquestionably a sound one as applied to a case where the original liability is either unliquidated or doubtful in its character, as it also is as applied to a case where what is accepted in lieu of the original obligation is within the scope and reach of that obligation. The underlying principle, in so far as unliquidated or doubtful obligations are concerned, is that which supports the adjustment and compromise of such claims and an accord and satisfaction thereof. *Donohue* v. *Woodbury,* 6 Cush. (Mass.) 148; *Fuller* v. *Kemp,* 138 N. Y. 231, 33 N. E. 1034. An agreement of compro-

mise is supported by a sufficient consideration where it is in settlement of a claim which is unliquidated. *Baird* v. *United States,* 96 U. S. 430, 431; *Heffelfinger* v. *Hummel,* 90 Ia. 311, 314, 57 N. W. 872; 8 Cyc. 505.

Defendant's counsel suggest that if the notes are to be supported by the obligation previously resting upon their maker, it was incumbent upon the plaintiff to present proof that their amount was reasonably necessary as a provision for either the plaintiff or for herself and child, and therefore within the limits of that obligation. This claim has already been answered, inferentially at least. The agreement between Mr. Root and the plaintiff, which was involved in the giving and acceptance of the notes, avoided such a necessity. In so far as they passed in satisfaction and discharge of the pre-existing obligation, the parties liquidated that obligation as the law permitted them to do. It thereafter became incompetent for Mr. Root to recall what he had done, or to call in question the conclusive effect upon him of his adjustment. And his executor is no more competent to do so.

Complaint is made of the court's instruction to the effect that if it should be found that the plaintiff held the notes of Mr. Root in the amounts claimed by her and having the history hereinbefore recited, that she subsequently gave them to him for safe-keeping, he promising to make a new will, so that in case of his death she would have the use of what money he left and her son be his heir, and that he thereafter destroyed the notes and did not keep his agreement in the matter of a new will, the plaintiff would be entitled to recover the amount of the notes with interest. It is said that the plaintiff, suing in her own name and in her individual capacity, was thus permitted to recover the amount represented by the notes, although the consideration for them was an obligation in favor of her son as well as herself for their future provision, and the promise under which they were surrendered to Mr. Root was in like manner

one which involved a benefit to both mother and son, to wit, a promise that he would make a will which should give to her the use of his property, and to her son the remainder interest. It is said, therefore, (1) that, as the notes were drawn to her individually, they constituted a promise, which, if enforced in the plaintiff's sole favor, would result in leaving the son unprovided for; and (2) that the notes in her hands, if valid at all, were held by her, not in her individual capacity, in which she sues, but as trustee.

The first of these contentions assumes that the notes were given to the plaintiff in full satisfaction of the promise to Arthur both as respects her rights thereunder and those of her son. Accepting this assumption as correct, and assuming, further, that under the conditions of the agreement between Mr. Root and Arthur the plaintiff was incompetent to represent the full beneficial interest created by the former's undertaking in converting it into liquidated terms, realizing upon it, and managing it, it would not follow that the son's rights would be affected by permitting the plaintiff's recovery. Mr. Root was fully cognizant of the situation, and if he chose to deal with the plaintiff, as he voluntarily did, he must be held to have accepted the risk, if any there was, involved in an agreement which might not free him from a further demand in favor of one who was not a party to it. It certainly could not free him from such demand on the part of anybody whose rights were not represented in any attempted adjustment or compromise of them. Furthermore, the son would not in any event be left unprotected in his interests, since in the situation stated equity would impress a trust in his favor upon any proceeds which came into the plaintiff's hands to the extent of his interest therein, whatever it should appear to be.

The second contention also assumes that the promises embodied in the notes which the plaintiff held and surrendered were made, or must be regarded as having been made, for the benefit of not only herself, but also of her son. As-

suming this to have been the case, she was, nevertheless, the promisee and the only party to the contracts save the promisor. She was, therefore, by the accepted principles of our law, the proper person to maintain an action upon them, even though the proceeds in her hands would be impressed with a trust in favor of the son. *Baxter* v. *Camp*, 71 Conn. 245, 248, 41 Atl. 803; *Lamkin* v. *Baldwin & Lamkin Mfg. Co.*, 72 Conn. 57, 67, 43 Atl. 593, 1042. She held no official relation of trustee, and the promises were not made to her in that capacity.

It is further urged that there was error in the instructions last recited, in that the jury were thereby permitted to return a verdict in favor of the plaintiff upon proof of matters which lay outside of the issues. It is said, in support of this claim, that these instructions authorized the jury to find for the plaintiff for the breach of an agreement to make a new will containing certain provisions favorable to her, whereas the complaint presented no such cause of action. We fail to discover any substantial foundation for this claim. It is true that the complaint sets out no cause of action resulting from Mr. Root's failure to keep his alleged agreement in the matter of a new will. It is, however, equally true that the plaintiff did not undertake to establish any such cause of action, and that the court did not present such an one for the consideration of the jury. The conditions stated by the court in the passage referred to carried the right of action back to the notes claimed to have been held by the plaintiff, and rested that right upon the obligations assumed in them, which continued unimpaired notwithstanding subsequent events which had deprived her of their possession, and resulted in their destruction without an accepted equivalent, if those events as the court detailed them were found to have occurred. These subsequent events were not stated to the jury as furnishing a basis of recovery. They were involved in the pertinent history of the notes as the plaintiff claimed it, and as it had been spread before the

jury, and the court naturally and properly included it in its recital of the conditions bearing upon the claim which the plaintiff made to recover; not what she had suffered by Mr. Root's failure to make a will, but the amount represented by the notes, which she was entitled to recover since they had not been voluntarily surrendered or cancelled, nor an accepted equivalent received.

It is suggested that, although the plaintiff and her son were shown to have been the beneficiaries of such a contract between Arthur and Mr. Root as was claimed, the plaintiff could not recover under it, since it was a promise made to another for her benefit, and she was not a party to the contract. *Baxter* v. *Camp*, 71 Conn. 245, 41 Atl. 803. She is not seeking to recover under that agreement, but under and by virtue of a later one to which she was the party promisee, that is, the agreement by the operation of which she became possessed of the notes of which she was the payee.

An examination of the evidence shows that testimony was presented, which, if credited by the jury, would warrant them in finding facts which under the instructions would be sufficient to justify the verdict rendered. The question of credibility was one peculiarly within their province, and we cannot say that the court was in error in deciding that their conclusions were not so palpably wrong as to justify the suspicion that they or some of them were influenced by corruption, prejudice, or partiality. *Brooks' Appeal*, 68 Conn. 294, 297, 36 Atl. 47.

There is no error.

In this opinion the other judges concurred.