THE TEXAS COMPANY *v.* THE CROWN PETROLEUM CORPORATION

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 7—decided August 8, 1950

*Reuben Sudarsky,* for the appellant (defendant).

*Ralph C. Dixon,* with whom was *David R. Hubbard,* for the appellee (plaintiff).

INGLIS, J. In this action the plaintiff seeks to enforce an option to purchase real estate granted to it in a lease as modified by a supplementary agreement between it and the defendant entered into after the latter acquired title to the property from the original lessors.

Notwithstanding the defendant's wholesale attack upon the finding, no change in it is warranted. The essential facts found are the following: On July 31, 1944, Ellik Nirenstein and five other members of his family, hereinafter referred to as the lessors, owned property located at the northeast corner of Albany Avenue and Oakland Terrace in Hartford. It had a frontage of about 87 feet on Albany Avenue and of about 119 feet on Oakland Terrace. The southern part of the property, extending from Albany Avenue north along Oakland Terrace for 59 feet, had been occupied by the plaintiff's gasoline station since 1930. The northern portion, with a frontage on Oakland Terrace of about 60 feet, was occupied by a two-family house.

By lease dated July 31, 1944, the lessors leased to the plaintiff that portion of the premises devoted to the gasoline station for the term of three years from September 1, 1944. The lease was drawn on a printed form. The first paragraph of clause 9 in the printed form provided for an option to purchase "the demised premises" at any time during the term of the lease, with a blank space for the purchase price. Ink lines were drawn through this paragraph, but farther down on the same page of the form the following was typed in: "(9) — OPTION. — Lessor hereby gives to lessee the right and option to purchase the demised premises and all structures and improvements thereon at any time during the term of this lease or any extension or renewal thereof, for the sum of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00)." Then followed immediately a description by metes and bounds of the entire property, with a frontage on Oakland Terrace of 119 feet. Except for the description, the phraseology of this paragraph followed that of the deleted printed paragraph. The option granted by the typewritten paragraph will be referred to as the specific price option.

The second paragraph of clause 9 as it appeared in the printed form read as follows: "Lessor also agrees that if at any time during the term of this lease or any extension or renewal thereof, he shall receive a bona fide offer to purchase the demised premises which offer he shall desire to accept, he will immediately give the lessee written notice of the receipt of such offer and of his desire to accept same, and lessee shall have thirty days after receipt of such notice in which to elect to purchase said premises upon the same terms as those contained in such offer." That paragraph was amended by deleting the words "demised premises" and inserting in lieu of them "demised premises and those hereinafter described." This last phrase obviously referred to the

description of the property which appeared in connection with the specific price option. The option granted in this second paragraph of clause 9 will be referred to as the first refusal option.

The third paragraph of clause 9 of the lease provided: "Lessee's notice of election to purchase pursuant to either of the options granted in the two preceding paragraphs shall be sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option period expires. Lessor shall, when requested by lessee, deliver to lessee complete abstracts of title, furnish up-to-date survey . . . showing elevations of property and corners marked . . . upon receipt of which the lessee shall have a reasonable time in which to examine the title and, upon completion of title examination . . . shall tender the purchase price to lessor. . . ."

On January 22, 1945, the lessors notified the plaintiff that the defendant was offering to purchase the entire property for $22,500. Within a few days the plaintiff wrote the lessors that it was not interested in purchasing the property at that time but would continue to occupy it under its lease. By deed dated April 19, 1945, the lessors conveyed the entire property to the defendant subject to the plaintiff's lease. The defendant, like the plaintiff, is engaged in the business of operating gasoline stations.

When the lease was entered into, it was the understanding and agreement of the parties that clause 9 gave the plaintiff an option to purchase the entire property for $27,500 and a first refusal option also on the entire property. This understanding was known to the president of the defendant, and he acted throughout upon the basis of this understanding.

After it acquired title to the property, the defendant desired to sell the two-family house to Joe Guthman,

who was willing to purchase it for $8000. The defendant's president, knowing that it was necessary to obtain the plaintiff's consent to make the sale, started negotiations to obtain that consent on July 2, 1945. After some correspondence the plaintiff and the defendant entered into a so-called supplementary agreement. This agreement, after reciting that the lease contained an option to purchase the entire premises, provided that the description of the premises covered by the option to purchase be amended by reducing the size thereof to an area having a frontage of 66.40 feet on Oakland Terrace. It further provided that the option price be reduced to $19,500, the $8000 difference representing the sale price of the part of the property to be sold to Guthman.

On August 22, 1947, nine days before the expiration of its lease, the plaintiff notified the defendant by registered mail that it exercised its option to purchase the premises described in the supplementary agreement for $19,500. Instead of requesting the defendant to furnish abstracts of title and a survey, as provided in the option, the plaintiff itself procured a title search and survey. This work was not completed until October 9. On October 16 the plaintiff made a tender of the purchase price of $19,500, but the tender was refused by the defendant. The trial court concluded, upon subordinate facts which justify the conclusion, that the tender was made within a reasonable time.

The lease contained a provision that if the lessee held over after the expiration of the lease its tenancy should be from month to month only. It did stay in possession after September 1, 1947. On October 16 it mailed to the defendant its check for $250 to cover the rent for September and October. On September 30, 1947, the defendant caused a notice to quit possession to be served on the plaintiff. It later started summary pro-

cess proceedings, and those proceedings were still pending at the time of the trial of this case.

Upon these facts the court concluded that the plaintiff was entitled to a conveyance of the property in accordance with the supplementary agreement and ordered specific performance.

The defendant makes two main contentions: that the supplementary agreement is unenforceable both because it lacked consideration moving from the plaintiff and because it was entered into under mutual mistake; and that the plaintiff did not exercise its option within the time limited by the contract.

It is obvious that the consideration given by the plaintiff for the supplementary agreement was the surrender of all claims of rights under the specific price option contained in the lease. The defendant's claim is that that surrender was no detriment because the option contained in the lease was to purchase only the "demised premises," which was the gasoline station, for $27,500 while the option in the supplementary agreement was to buy that property plus a strip about seven feet wide across its rear for the lesser price of $19,500. It is true that at one point the lease describes the property covered by the option as the "leased premises." That, however, is immediately followed by a description of the entire property by metes and bounds. This description was so placed in the lease that it evidenced the intention of the parties that the property so described should be subject to the option. This intention was further evidenced by the fact that the provision for a specific price option contained in the printed form of the lease had been deleted. That form described the property to be covered by the simple phrase "the demised premises." The apparent reason for the deletion was that the scrivener found the phrase "the demised premises" inadequate and needed more space

than was provided in the printed form for the description of the property to be included. On the face of the lease, therefore, there was an ambiguity as to just what property was intended to be included in the option. Without attempting to resolve that ambiguity, it is sufficient to point out that it existed and that the plaintiff was entitled to have an interpretation of the option agreement by a court. See *Brundrett* v. *Rosoff*, 92 Conn. 698, 701, 104 A. 67; *Baydrop* v. *Second National Bank*, 120 Conn. 322, 327, 180 A. 469. It was in a position to make at least a substantial and bona fide claim, not only against the original lessors but also against the defendant, which took subject to the lease, that the option should be interpreted to cover the entire premises. It was making such a claim at the time the supplementary agreement was executed. Its surrender of that claim was good and adequate consideration for the new option granted by the supplementary agreement. *Root* v. *New Haven Trust Co.*, 82 Conn. 600, 606, 74 A. 950; *Thomas' Appeal*, 85 Conn. 50, 54, 81 A. 972; 1 Williston, Contracts (Rev. Ed.) p. 474.

The defendant also claims that the failure of the plaintiff to exercise its first refusal option when notified that the lessors had a bona fide offer for the entire property extinguished, as a matter of law, its specific price option, and that, therefore, the surrender of the specific price option was no consideration for the supplementary agreement. This claim is based on the following four cases, cited in the defendant's brief: *Shell Oil Co.* v. *Blumberg*, 154 F. 2d 251; *Manasse* v. *Ford*, 58 Cal. App. 312, 208 P. 354; *Harding* v. *Gibbs*, 125 Ill. 85, 17 N. E. 60; *Adams* v. *Helburn*, 198 Ky. 546, 249 S. W. 543. It is true that in each of those cases it is held that the lessee lost his option to purchase at a specific price when he did not exercise his first refusal option. In each case, the reason for that holding is that

the particular contract involved required such an interpretation. It is not necessary for us to determine whether the agreement for alternative options in the present lease should be interpreted in the same way. At the time the supplementary agreement was made, that was at least a debatable question. See *Butler* v. *Richardson*, 74 R. I. 344, 348, 60 A. 2d 718. The plaintiff was in a position to make a bona fide claim that its failure to exercise the first refusal option did not nullify its fixed price option and that the latter was still binding on the defendant. Accordingly, whatever the correct interpretation of the contract on this point might have been, the surrender by the plaintiff of its claim under the fixed price option was good consideration for the supplementary agreement.

The defendant's claim that the supplementary agreement is unenforceable because it was entered into under a mutual mistake falls for much the same reason as its claim of lack of consideration. Its contention is that the parties agreed to the supplementary agreement under the belief that the plaintiff under the original lease had an enforceable option on the entire property and that that belief was mistaken. There is no finding to the effect that the defendant, when it executed the supplementary agreement, believed, mistakenly or otherwise, that the plaintiff had the right to enforce an option to purchase the entire property. From all that appears, it may have realized that there was some question about that because of the ambiguity in the description contained in the option. From the recital contained in the supplementary agreement, it appears that both parties believed that the actual agreement between the lessors and the plaintiff had been that the specific price option covered the entire property. In that belief neither party was mistaken. If it is granted that both parties to the supplementary agreement

failed to appreciate the fact that there was an ambiguity in the original option, that would not constitute such a mutual mistake as would justify a rescission of the supplementary agreement. The right to relief against the consequence of a mutual mistake is an equitable right. In cases involving a claimed mistake of law, it is only when one person has obtained an unconscionable advantage over another that equity will grant relief. *Richey* v. *First National Bank & Trust Co.*, 123 Conn. 360, 366, 195 A. 732; *Monroe National Bank* v. *Catlin*, 82 Conn. 227, 231, 73 A. 3. In the present case, the plaintiff did not obtain an unconscionable advantage by reason of any mistake of the parties concerning the definiteness of the original option. What it received under the supplementary agreement was no more than it was justly entitled to by reason of the actual agreement between it and the lessors. The court would not do equity if it permitted the defendant to avoid its liability upon the supplementary agreement on the ground that it did not know that the original option was ambiguous in its description of the land which the parties to that option really intended to describe. The supplementary agreement may not be avoided on the ground that there was any mutual mistake.

The other main contention of the defendant is that the plaintiff failed to exercise its option within the time prescribed by the contract. This is based on the fact that the plaintiff did not tender the purchase price within the term of the lease. The question is therefore raised whether the plaintiff was obligated to do anything more during the term of the lease than to give, as it did, the notice that it exercised its option.

The provisions of the contract are decisive of this question. They specify expressly and distinctly that "Lessee's notice of election to purchase . . . shall be

sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option period expires." The option period of the plaintiff's specific price option expired on the last day of the term of the lease. Since its notice of election might be given at any time before midnight of that day, there is no basis for the claim that it was required to do anything more than to give that notice in order to exercise its option.

When that notice was given, it constituted an acceptance of the landowner's continuing offer to sell at the price stated, and it completed the bilateral contract of sale as of the date of the notice. 3 Thompson, Real Property (Perm. Ed.) § 1332; *Wachovia Bank & Trust Co.* v. *United States,* 98 F. 2d 609, 611; *Ackerman* v. *Carpenter,* 113 Vt. 77, 80, 29 A. 2d 922. That contract of sale was one which specified no time for performance and, therefore, was one to be performed within a reasonable time. *Kane* v. *Kane,* 107 Conn. 716, 723, 142 A. 466; *Hartford-Connecticut Trust Co.* v. *Cambell,* 95 Conn. 399, 407, 111 A. 864; *Renoud* v. *Daskam,* 34 Conn. 512, 516; *Ackerman* v. *Carpenter,* supra, 81; *Breen* v. *Mayne,* 141 Iowa 399, 405, 118 N. W. 441.

The defendant's contention that the amount tendered by the plaintiff should have included interest from the date of its election to exercise the option to the date of tender has no merit. The purchase price was not due until the deed was passed. Tender of it within the time which the court found was reasonable was sufficient to put the defendant in default on its agreement to convey the property and entitled the plaintiff to specific performance of the contract.

Error is claimed in the admission of the testimony of one of the lessors who negotiated the lease on behalf of the lessors that the agreement between him and the plaintiff was that the latter would have the option to purchase the entire property for $27,500. Inasmuch as

one of the issues in the case was whether there had been a mutual mistake in stating the agreement in the lease in such a manner that it might be interpreted as granting an option on only a portion of the property, this evidence was clearly admissible. *Cake* v. *Peet*, 49 Conn. 501, 506.

The defendant assigned error in the form of the judgment in that it failed to add to the amount of $19,500, which it provided should be paid to the defendant upon delivery of the deed, interest on that amount to the date of the judgment. When interest is not required by the terms of a contract upon which judgment is rendered, it is awarded only in the nature of a penalty for the wrongful detention of property. *Wallace Barnes Co.* v. *Zachs*, 117 Conn. 285, 288, 167 A. 726. In this case, it was not the plaintiff who had wrongfully delayed the payment of the purchase price of the property. It was the defendant who by its breach of the contract had caused the delay. Under those circumstances it was not entitled to interest.

There is no error.

In this opinion the other judges concurred.