PARKWAY TRAILER SALES, INC. *v.* WOOLDRIDGE
BROTHERS, INC., ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued November 2—decided December 20, 1960

*David A. Wilson,* for the appellant (named defendant).

*Joseph Asbel,* for the appellant (defendant The Becket Corporation).

*John J. Bracken,* with whom was *Leonard G. Tracy,* for the appellee (plaintiff).

MURPHY, J. The plaintiff seeks to enforce an option to purchase real estate. The option was granted to the plaintiff by the named defendant in a lease executed in 1947 and was extended in 1952 upon the renewal of the lease.

The defendants request that the finding be corrected to include many paragraphs of their draft finding which they claim were admitted or undisputed. No material corrections can be made, since the defendants have not filed, with their brief, an appendix of the necessary relevant and material evidence. Practice Book § 447; Maltbie, Conn. App. Proc. § 330.

The essential facts found by the trial court follow: The named defendant, hereinafter called Wooldridge, was the owner, on November 20, 1947, of a tract of vacant land in the town of Berlin on United States route 5. At that time, the highway here was part of the Wilbur Cross parkway. Parenthetically, it may be pointed out that this part of route 5 ceased to be a part of the parkway in 1955. See Rev. 1949, §§ 2274, 2275; Sup. 1955, § 1203d; General Statutes §13-152. It is now generally known as the Berlin turnpike. On November 20, 1947, Wooldridge leased its tract to the plaintiff for five years from May 1, 1947, at stated monthly rentals, with the privilege in the plaintiff of renewing the lease for a further period of five years under the same terms and conditions except for an increase in rent. Prior to the expiration of

the lease, it was renewed for a second period, that is, to May 1, 1957. The lease contained an option for the plaintiff or its assignee to purchase the property at any time during, or at the end of, either of the terms. The stated purchase price during, or at the end of, the second period was $15,000. In August, 1952, Wooldridge conveyed the property to the defendant The Becket Corporation, subject to the plaintiff's lease and option to purchase. The plaintiff, however, was not notified of the conveyance. Since early in 1955, the rental checks have been made out to The Becket Corporation and have been sent to it in care of Wooldridge, pursuant to Wooldridge's instructions. Both defendants are closely held family corporations with the same personnel as officers and directors.

On April 17, 1957, an attorney representing the plaintiff wrote to Wooldridge that the plaintiff desired to purchase the property in accordance with the terms and conditions of the lease and option. On behalf of the plaintiff, the attorney requested that a warranty deed be prepared for the transfer of title and payment of the purchase price of $15,000. The defendants admit that this letter was received and that it was notice to both of them. Within two days, Homer Wooldridge, the dominant person in both corporations, sought to dissuade the plaintiff's president from buying the property and offered a new lease for ten years on the same terms, but without any option to purchase. The plaintiff refused the proposition, whereupon Homer Wooldridge stated that if the plaintiff went through with the purchase the defendants would no longer furnish water to the plaintiff's trailer camp. The plaintiff, at its own expense during its occupancy, had developed the unused tract of land into a park for trailer accommo-

dations and sales. In excess of $15,000 had been spent by the plaintiff on major capital and permanent improvements. The defendants did nothing in the premises until August 12, 1957, other than to instruct their attorney to be prepared to draw a deed or a new lease, as the plaintiff might elect. On that date, their attorney notified the plaintiff's attorney by letter that they considered the option as having expired with the lease on May 1, 1957. This letter followed the receipt by the defendants of one from the plaintiff's attorney, dated August 7, 1957, in which the defendants were requested to execute and deliver the warranty deed. From the day Homer Wooldridge attempted to persuade the plaintiff's president not to purchase the property until August 7, 1957, there had been no communication between the parties. The plaintiff had, however, mailed a check each month in an amount equal to the rent paid under the lease.

The court found, further: On April 16, 1957, the plaintiff, subject to a title search and survey, had a commitment from a bank for a mortgage of $8000 on the property. With that fund, plus cash, bank deposits and readily convertible securities, the plaintiff had sufficient available assets to conclude the purchase upon presentation of a proper deed by the defendants. The amount of the mortgage commitment was increased to $9500 in July after the plaintiff had caused a well to be constructed on the property. The defendants have not tendered a deed to the plaintiff, though the plaintiff has been ready, willing and able to complete the purchase of the property. A delay, which under the circumstances should have been avoided, in completing the title search and survey was not prejudicial to the defendants, who had no other plans for the use of the

property and no other prospective purchasers for it.

The defendants have appealed from a judgment decreeing specific performance of the contract by them. Their basic contentions are that the plaintiff could not properly exercise its option without actually tendering the purchase price to the defendants before or at the termination of the lease and that, since the plaintiff failed to do that, it was not entitled to specific performance. The defendants also contend that the plaintiff was never ready, able and willing to buy the property; that the lapse of time from the expiration of the lease to August 7, 1957, when the deed was demanded, was an unreasonable length of time; and that the making of payments each month in an amount equal to the rental payments constituted a waiver of the right to enforce performance.

An action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles. *Barber* v. *Baldwin,* 135 Conn. 558, 564, 67 A.2d 1; *Malkan* v. *Hemming,* 82 Conn. 293, 295, 73 A. 752; 49 Am. Jur. 6, § 2. The lease itself was silent as to the manner in which the option was to be exercised. It did not provide that the plaintiff had to pay the purchase price on or before the expiration of the lease. Rather it conferred a privilege upon the plaintiff which did not become binding upon any party until the plaintiff notified the defendants that it was taking up the option. This it did when its attorney sent the letter of April 17, 1957, to Wooldridge. Thereupon a binding bilateral contract came into being; it obligated the defendants to convey title by good and sufficient deed and obligated the plaintiff to accept the deed and pay the purchase price. *Ackerman* v. *Carpenter,* 113 Vt. 77, 82, 29 A.2d 922; 1 Corbin,

Contracts, p. 918. In the absence of a specified time for performance in the contract of sale which arose as a consequence of the plaintiff's acceptance of the offer to sell contained in the lease, a reasonable time within which to complete the sale was permitted. *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217, 227, 75 A.2d 499. The trial court concluded that the three months and seven days which elapsed between the expiration of the lease and the letter demanding delivery of the warranty deed was a reasonable length of time under the circumstances in this case. What is a reasonable length of time is ordinarily a question of fact for the trier. *International Tool & Gauge Co.* v. *Borg,* 145 Conn. 644, 648, 145 A.2d 750; *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 347, 71 A. 358. Considering the delays which ensued because of the defendants' attitude and the need for a survey and title search, we cannot say that the conclusion was unreasonable.

As the defendants did not attempt to carry out their end of the contract, but rather attempted to discourage the plaintiff from purchasing, we have no reason to speculate upon the situation which might have eventuated had the defendants tendered a valid deed at the end of the period of the lease and demanded immediate payment.

The court found both as a matter of fact and as a conclusion of law that the plaintiff had been ready, able and willing, after April 17, 1957, to perform its part of the contract. This is an ultimate fact rather than a legal conclusion. It finds support in the unattacked subordinate facts which were found, and it cannot be altered. There is no merit to the claim that the monthly payments after the expiration of the lease were other than for use and occupancy

pending consummation of the sale. They did not result in a waiver of the plaintiff's rights under the contract which came into being when the defendants received notice that the option was being exercised. Nor did the payments create a month-to-month tenancy. Neither the case cited by the defendants nor § 47-22 of the General Statutes applies. The plaintiff at no time after April 17, 1957, claimed any further leasehold rights in the property.

There is no error.

In this opinion the other judges concurred.