## MARTHA SCHLICHER *v.* KENNETH SCHWARTZ
### (AC 19655)

Lavery, Zarella and Spallone, Js.[1]

Argued January 24—officially released June 6, 2000

*Jonathan J. Klein,* for the appellant (defendant).

*Kevin J. Daly, Jr.,* with whom were *Thomas F. Upson* and, on the brief, *Shaun M. McGrath,* for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The defendant, Kenneth Schwartz, appeals from the judgment of strict foreclosure ren-

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

dered by the trial court on May 11, 1999. On appeal, the defendant claims that the court improperly (1) found that under the terms of the agreement that was secured by the mortgage, the defendant owed a duty to develop certain property within a reasonable time and that he breached that obligation, (2) found the amount secured by the mortgage to be $288,829.76 and (3) ordered a strict foreclosure of the mortgage. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. In January, 1989, the plaintiff, Martha Schlicher, owned approximately sixty-four acres of real property on Smith Road in Thomaston. The defendant, a licensed architect who also holds himself out as a real estate planner, advised the plaintiff that he wanted to develop and sell the property. The defendant was a close friend of the plaintiff's family for more than thirty years. The plaintiff, who was seventy-eight years old, intended to use the funds from the sale to support herself.

On January 29, 1989, the plaintiff and the defendant entered into a purchase and sale agreement for the sixty-four acre property. The parties agreed to a contract price of $400,000. The defendant paid a $15,000 deposit and an additional $85,000 at the time of closing on February 14, 1989. The plaintiff took back a note for the remaining $300,000 secured by a mortgage.

The defendant did not develop the property between 1989 and 1993. He also failed to make any of the principal payments called for under the note.[2] As a result, the parties renegotiated the original contract and entered into a new agreement dated May 21, 1993. The new agreement provided that the plaintiff would discharge the original $300,000 debt and release the mort-

[2] The defendant made four interest payments totaling approximately $22,000.

gage due her from the defendant. In return, the plaintiff obtained a new first mortgage on the property securing the May 21, 1993 agreement, and the defendant obligated himself to pay the plaintiff $15,000 upon the sale of each home or lot on the property, as well as to share with the plaintiff the profits on any home sold.[3] The new agreement further provided that the arrangement would terminate upon total payment of $300,000 to the plaintiff. The May 21, 1993 agreement was necessary for the defendant to obtain Connecticut Housing Finance Authority (housing authority) financing that would allow him to develop the property.

Prior to 1989, the sixty-four acre parcel had been subdivided into three residential building lots in addition to the remaining acreage.[4] On January 26, 1996, the plaintiff, at the defendant's request, subordinated the 1993 mortgage to a mortgage to the housing authority in the amount of $100,000 with respect to one of the lots. On February 2, 1996, the plaintiff executed a release of the mortgage she held as to lots 2A and 4B for which she was paid $30,000. This payment was consistent with the terms of the May 21, 1993 agreement. The defendant built a home on lot 4B, sold

---

[3] The May 21, 1993 agreement provides in part:

"4. Upon the sale of any lot, the costs of dividing or sub-dividing said lot including survey costs, permit fees and closing costs shall be deducted first and then the [plaintiff] shall receive $15,000.00 with the balance due the [defendant]. At such time as the [defendant] has received the aggregate of $100,000.00 the parties agree to divide the proceeds of any lot sale after the aforementioned costs.

"5. In the event that the [defendant] builds a home for sale on any lot, the net profit of said sale after deducting the costs enumerated in paragraph 4 of this agreement and after paying the [plaintiff] $15,000.00 shall be divided equally between the parties."

[4] Approximately three and one-half acres of the property had been subdivided prior to 1989 into three lots for residential single-family homes. Any construction was subject to the approval of the Thomaston inland wetlands commission. These lots are identified as lots 2A, 2B and 4B. The remaining 61.5 acres has never been subdivided and remains unimproved land.

the home and utilized a portion of the funds to satisfy the housing authority mortgage. The plaintiff received no additional payment for the sale of that home, as the proceeds were insufficient to warrant any additional payment under the contract. After selling the home, the defendant made no additional payments to the plaintiff. At the time of trial, there was a partially completed home on lot 2A and a foundation on lot 2B. The housing authority, which had loaned additional amounts to the defendant for construction on lot 2A, no longer is loaning the defendant money because he failed to complete the construction by the agreed date. Eventually, the defendant defaulted on the housing authority mortgage and now owes $67,776.19 to the housing authority.

The defendant also failed to pay the property taxes on the real estate. On February 11, 1997, the town of Thomaston (town) instituted a foreclosure action naming the plaintiff and the defendant as parties. The town obtained a judgment of foreclosure by sale on June 17, 1997. On the following day, the plaintiff paid the property taxes to the town in the sum of $18,829.76, thus terminating the foreclosure action. The defendant has made only partial payments on the taxes to the town subsequent to the plaintiff's payment. The defendant has neither gained the necessary governmental approvals for further subdivision or construction nor commenced construction beyond that previously discussed.

On October 23, 1997, the plaintiff initiated the present foreclosure action against the defendant. At trial, Neil Scala, the Thomaston building inspector, testified that he considered the project abandoned and had revoked the building permit. Samuel Barto, the Thomaston town planner, zoning enforcement officer and inland wetlands officer, described his dealings with the defendant regarding inland wetlands issues as frustrating and exasperating. Further, he testified that the inland wetlands commission had issued numerous show cause

orders relative to the property. On March 2, 1998, the property was appraised at a fair market value of $40,000 for lot 2B and $210,000 for the remainder of the property. The court rendered judgment of strict foreclosure, and the defendant appealed.

I

The defendant first challenges the nature of his obligations under the agreement secured by the mortgage.[5] The defendant contends that the court incorrectly found that he was required under the contract to develop the property. We find this claim to be without merit.

The court concluded that the defendant did not develop the property in an orderly fashion and within a reasonable period of time and, therefore, did not fulfill his obligations under the mortgage agreement. The court rendered a judgment of strict foreclosure on the property, including lot 2B and the remaining 61.5 acres of undeveloped property, finding the amount of the debt to be $288,829.76 plus costs and attorney's fees.[6]

"The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. *Issler* v. *Issler*, [250 Conn. 226, 235, 737 A.2d 383 (1999)]. [T]he construction of a written contract is a question of law for the court. *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 179, 544 A.2d 1185 (1988); *Sacharko* v. *Center Equities Ltd. Partnership*, 2 Conn. App. 439, 445, 479 A.2d 1219 (1984). The scope of review in such cases is plenary. *Branch* v. *Occhionero*, 239 Conn. 199, 205, 681 A.2d 306 (1996);

---

[5] The defendant did not challenge at trial or on appeal the validity of the mortgage. The defendant limited his challenge to the issue of the scope of the obligation under the agreement secured by the mortgage. Therefore, we limit review to the issue raised.

[6] The $288,829.76 represents a principal debt of $270,000 plus the $18,829.76 in taxes paid by the plaintiff.

*Hammond* v. *Commissioner of Correction,* 54 Conn. App. 11, 16, 734 A.2d 571, cert. granted, 251 Conn. 919, 742 A.2d 358 (1999). Because our review is plenary, involving a question of law, our standard for review is not the clearly erroneous standard used to review questions of fact found by a trial court." (Internal quotation marks omitted.) *Amodio* v. *Amodio,* 56 Conn. App. 459, 470, 743 A.2d 1135 (2000).

"A contract is to be construed as a whole and all relevant provisions will be considered together." *Lar-Rob Bus Corp.* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976); see *Blatt* v. *Star Paper Co.,* 160 Conn. 193, 200, 276 A.2d 786 (1970); 17 Am. Jur. 2d, Contracts § 258 (1990). "In giving meaning to the terms of a contract, we have said that [a] contract must be construed to effectuate the intent of the contracting parties." (Internal quotation marks omitted.) *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983); *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598, 424 A.2d 277 (1979); *Ginsberg* v. *Mascia,* 149 Conn. 502, 506, 182 A.2d 4 (1962). "In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 616, 164 A.2d 413 (1960); *Marcus* v. *Marcus,* 175 Conn. 138, 141, 394 A.2d 727 (1978).

The court's finding that the defendant contracted to develop the property is supported by a plain reading of the May 21, 1993 agreement. One of the recitals in the agreement provides that "[t]he [plaintiff] desires to reach an agreement with the [defendant] to develop the said property." Additionally, the defendant agreed in the contract to pay to the plaintiff a portion of the profit from the sale of homes constructed on the property or of lots sold. It is clear from the four corners of the

agreement that the intent of the parties was that the defendant would develop the property.[7]

The defendant next challenges the court's finding that the defendant failed to develop the land within a reasonable time. The contract is silent as to the time of performance. "Where no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. *Texas Co.* v. *Crown Petroleum Corporation*, 137 Conn. 217, 227, 75 A.2d 499 [1950]; *Santoro* v. *Mack*, 108 Conn. 683, 689, 145 A. 273 [1929]. *Benassi* v. *Harris*, 147 Conn. 451, 458, 162 A.2d 521 (1960); see also *Central New Haven Development Corporation* v. *LaCrepe, Inc.*, 177 Conn. 212, 216, 413 A.2d 840 (1979). What is a reasonable length of time is ordinarily a question of fact for the trier. *International Tool & Gauge Co.* v. *Borg*, 145 Conn. 644, 648, 145 A.2d 750 [1958]; *Loomis* v. *Norman Printers Supply Co.*, 81 Conn. 343, 347, 71 A. 358 [1908]. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.*, 148 Conn. 21, 26, 166 A.2d 710 (1960)." (Internal quotation marks omitted.) *Martin* v. *Martin's News Service, Inc.*, 9 Conn. App. 304, 308–309, 518 A.2d 951 (1986), cert. denied, 202 Conn. 807, 520 A.2d 1287 (1987). The defendant does not challenge the court's conclusion that if no time for performance is set out in the contract, the law presumes a reasonable time was intended. Rather, the defendant challenges the court's finding as to what a reasonable time was under the circumstances.

The standard of review with respect to a court's findings of fact is the clearly erroneous standard. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot

---

[7] The court also found that at the time of entering into the agreement, the defendant represented that he intended to develop the property quickly.

retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996).

The court had a sufficient basis in the evidence to determine that the defendant did not develop the property in a reasonable time between 1993 and 1997. The defendant had sold only two of the three lots, failed to subdivide the remaining sixty acres, built only one home, lost his housing authority construction financing and had the building permits revoked. All of this occurred despite the fact that a strong real estate market existed during this time frame. There is sufficient evidence to support the court's finding that the defendant failed to perform under the contract within a reasonable time.[8]

## II

The defendant's second claim is that the court improperly found the amount due under the agreement to be $288,829.76. The defendant claims that the only debt due the plaintiff is the $18,829.76 in taxes that she paid to the town. We disagree.

---

[8] The defendant takes issue with one sentence in the court's memorandum of decision, which states: "From the date of the first mortgage agreement in 1989 to the second mortgage agreement in 1993, [the defendant] did nothing." The defendant claims that the court incorrectly considered this time frame, as this original time frame preceded the 1993 agreement. In the very next sentence, however, the court outlined in detail the lack of performance by the defendant from 1993 to 1997. The court's discussion of the time frame between 1989 and 1993 merely put the relevant facts of this dispute into historical context.

"In an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed." *Lar-Rob Bus Corp.* v. *Fairfield,* supra, 170 Conn. 404–405.

The court based its damage calculation on the expectation that twenty lots would be sold and the plaintiff would be due $15,000 per lot or $300,000.[9] The defendant had sold two lots and paid the plaintiff $30,000. Thus, the court found that due to the defendant's breach of the agreement, the plaintiff was damaged in the amount of $270,000. In addition, the plaintiff was due the $18,829.76 that she paid in real estate taxes and is entitled, pursuant to General Statutes § 49-2 (a),[10] to add that amount to the debt secured by the mortgage.

The court properly found that the plaintiff was due $288,829.76.

### III

The defendant's final claim is that the court improperly ordered a strict foreclosure of the mortgage and that a foreclosure by sale would have been appropriate. We disagree.

The defendant's claim is premised on his insistence that $18,829.76 was the amount due to the plaintiff. Having held that the court was correct in establishing the debt in the amount of $288,829.76, plus costs and reasonable attorney's fees,[11] we now consider the

[9] The court found, on the basis of the defendant's testimony, that the property could be subdivided into twenty lots.

[10] General Statutes § 49-2 (a) provides: "Premiums of insurance, taxes and assessments paid by the mortgagee and payments of interest or instalments of principal due on any prior mortgage or lien by any subsequent mortgagee or lienor of any property to protect his interest therein, are a part of the debt due the mortgagee or lienor."

[11] See part II of this opinion.

appropriateness of the order for strict foreclosure in light of that holding.

The court has the discretion to determine whether a mortgage is to be foreclosed by sale or strict foreclosure, and the standard of review is whether the court has abused its discretion. See *Hartford Federal Savings & Loan* v. *Tucker*, 196 Conn. 172, 184, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). Having determined that the fair market value of the property was less than the amount of the mortgage debt, the court concluded that strict foreclosure was appropriate. In so finding, there was no abuse of discretion.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.