[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
PROCEDURAL HISTORY
The plaintiff in the above-captioned matter, Holly Grunsell, alleges in a one count Complaint dated April 6, 2000 that the defendant, A. Michael Saaf,[1] breached his lease agreement with her because the structural integrity of the leased premises was poor, unsafe and in violation of the State Building Code. The plaintiff seeks, among other things, a judgment in the amount of $17,500.00 representing a three month security deposit of $10,500.00 and $7,000.00 for two months rent at $3,500.00 per month. In his Answer and Counterclaim dated September 1, 2000 the defendant denies the plaintiff's allegations and seeks, among other things, a judgment in the amount of $10,500.00 for the plaintiff's failure to pay three months rent at $3,500.00 per month; reimbursement of a $3,500.00 broker's fee and an additional five percent late fee for the missed rent payments.
The parties' claims were tried to the court on October 2, 2001. After CT Page 1105 considering all evidence offered at trial as well as the arguments of counsel the court finds against the plaintiff and for the defendant on sole count of the complaint. The court further finds for the defendant and against the plaintiff on the defendant's counterclaim to the extent that the defendant seeks a judgment for payment of three months rent plus a five percent late fee. The court, however, does not award judgment to the defendant for reimbursement of the $3,500.00 broker's fee, attorney's fees or any statutory interest.
 FACTS
The court makes the following findings of fact based on the credible evidence offered at trial. In June of 1999 the plaintiff was looking for commercial space where she could open a day spa and to that end engaged the services of a realtor named Nina Brown. Ms. Brown found a suitable space for the plaintiff on the first floor of the defendant's 100 year-old three story building located at 136 Main Street, New Canaan. At that time the first floor tenant was a delicatessen which utilized heavy refrigeration equipment in its business and had occupied the space for close to ten years. Despite the nature of the previous tenant's business and the effect that its equipment had on the premises, the plaintiff decided to rent the space. She signed a "memorandum of terms" on June 16, 1999 in which she agreed, subject to the execution of a formal written commercial lease, to rent the aforementioned premises for three years with a monthly rent of $3,500.00. On that date the plaintiff wrote the defendant a check for $10,500.00 representing a three month security deposit and a second check for $3,500.00 representing the first month's rent. The plaintiff subsequently received from the defendant a formal written lease from the defendant including the previously mentioned rental terms as well as the following provision: "The [defendant] represents that the building now upon the premises conforms to all public authority . . . and the [defendant] agrees to make any changes at its own expenses [sic] upon receipt of non-compliance . . . from the [plaintiff] of defects therein now existing." The lease was scheduled to begin on July 1, 1999 and requires that "the [plaintiff] . . . pay a late charge of five percent for each payment that is more than ten (10) days late."
Prior to the start of the lease term the plaintiff read the written lease and inspected the leased premises while accompanied by her father, her step-mother and Brown. In addition, the plaintiff received the keys to the leased premises and had uninhibited access to it. Although the plaintiff enjoyed possession of the leasehold both before and after July 1, she did not return the signed lease to the defendant until July 12, 1999. One week after returning the written lease to the defendant the plaintiff, who had planned to renovate the premises, became concerned with the condition of the floor and arranged near the end of July to have the CT Page 1106 premises inspected by a civil engineer named George Jerves. Despite the plaintiff's concern about the floor, she wrote a check on July 27 for the August rent.
Jerves inspected the first floor and its supporting structure in the basement in the last week of July and issued a written report dated August 2, 1999. The plaintiff received a copy of the report as did her attorney, Patrick Crehan. As a result of the inspection Jerves determined that there were structural problems with the premises, that the premises were in violation of the State Building Code and that there was no danger that the first floor would collapse. Jerves found that the building could be brought into compliance with the Code and made safer if certain inexpensive remedial actions were taken. The plaintiff's contractor estimated that it would cost $2,750.00 to make the necessary repairs.
Crehan then wrote a letter dated August 9, 1999 to the defendant about the structural problem and also spoke about it with Jerry Sullivan, the defendant's attorney. Crehan subsequently telephoned the defendant to discuss the problem in the second week of August while the defendant was on vacation in Cape Cod, Massachusetts. At that time, the defendant told Crehan that the defendant would have his own engineer inspect the premises and have his own contractor estimate how much it would cost to remedy the structural problem. During the third week of August, after the defendant returned from vacation, his engineer verified that there was a structural defect and his contractor estimated that it would cost $850.00 to repair. At the time that the defendant's engineer inspected the premises neither the defendant nor his engineer had a copy of Jerves' report. In the last week of August the defendant notified Crehan about the engineer's findings, his contractor's repair estimate and indicated his willingness to make the necessary repairs at his own expense. The defendant also offered to arrange a meeting between Crehan and the contractor regarding the estimated repairs. Notwithstanding the defendant's agreement to remedy the structural defect at his own expense, as required by the contract, the plaintiff moved out and failed to pay any rent for September and for subsequent months.
When the plaintiff refused to pay rent for September, October and November the defendant re-rented the premises to another tenant for the months of December, 1999 through April, 2000 when the property was sold. He has the $10,500.00 security deposit paid by the plaintiff to cover the unpaid rent for the period between September and November. The new tenant paid the defendant the same $3,500.00 per month rent for the months of December through April. The defendant, a real estate broker who was familiar with the real estate market in New Canaan where he has worked since 1967, used another broker to find a replacement tenant in lieu of finding one himself. Additional facts will be provided as necessary. CT Page 1107
 DISCUSSION
The parties' written commercial lease agreement is a contract governed by the principles of contract law. In Central New Haven DevelopmentCorp. v. La Crepe, 177 Conn. 212, 214 (1979), the Supreme Court said the following:
 A lease is a contract. Cohn v. Fennelly, 138 Conn. 474, 476, 86 A.2d 183. In construing it, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. Perkins v. Eagle Lock Co., 118 Conn. 658, 663, 174 A. 77. Ingalls v. Roger Smith Hotels Corporation, 143 Conn. 1, 6, 118 A.2d 463 (1955); Lonergan v. Connecticut Food Store, Inc., 168 Conn. 122, 128, 357 A.2d 910 (1975); Collins v. Sears, Roebuck Co., 164 Conn. 369, 373-74, 321 A.2d 444 (1973); Perruccio v. Allen, 156 Conn. 282, 285, 240 A.2d 912
(1968). (Internal quotation marks omitted.)
The language of the contract establishes the intent of the parties to require the defendant "to make any changes at its own expense upon receipt of notice of non-compliance . . . from the [plaintiff] . . . of [structural] defects. . . ." When the defendant received notice of the structural defect in the middle of August 1999 he verified its existence and arranged for a contractor to estimate the repair cost. The defendant fully intended to fulfill his obligation under the contract and was prepared to do so within two weeks of receiving notice from Crehan. The plaintiff argues that the defendant had an obligation to act immediately to cure the structural defect when Crehan called him in Cape Cod, and that by the end of August it was too late for the defendant to carry out his obligation under the lease. The plaintiff further argues that this delay, coupled with the defendant's failure to directly notify the plaintiff of his efforts to take remedial action, constitutes a breach of contract by the defendant. The court disagrees.
The contract states that the defendant was required to remedy the structural problem "upon receipt of notice" from the plaintiff. It does CT Page 1108 not indicate that time is of the essence, nor does it state an outside time limit for performance. The contract language must be interpreted in light of reason and the surrounding circumstances. When a contract does not indicate that time is of the essence, then a failure to perform immediately does not necessarily constitute a breach. See Kakalik v.Bernardo, 184 Conn. 386 (1981). Further, "[w]here no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. . . . What is a reasonable length of time is ordinarily a question of fact for the trier." (Citations omitted; internal quotation marks omitted.) Schlicherv. Schwartz, 58 Conn. App. 80, 86 (2000). It was reasonable for the defendant, who received notice in the middle of August while away on vacation in Cape Cod, to commence the remedial action when he did at the end of August. Contrary to the plaintiff's claims, the defendant did in fact notify her about the actions of his engineer and contractor when the defendant so informed Crehan. Moreover, both Jerves and the defendant's engineer agreed that the structural problems did not create any substantial danger and could be easily remedied. The assertion that the premises were not dangerous is buttressed by the fact that the premises were in a nearly century old building which had withstood the business equipment used by the prior tenant for almost a decade. There simply is nothing in the contract language or the circumstances surrounding the contract to suggest that the defendant acted unreasonably or otherwise breached the contract.
The plaintiff by her own testimony admitted that she failed to pay rent for the months of September, October and November of 1999. Had she paid, the defendant would have received from her a total of $10,500.00. At the time of her failure to pay she had no legally justifiable basis for refusing to perform her contractual obligation and she has failed to offer one. As has already been indicated, the defendant acted reasonably in regard to his obligation to fix the structural problem. Even if, however, his actions were not reasonable the plaintiff still had an obligation to pay rent. The covenants of a lease are independent and the defendant's alleged failure to perform did not excuse the plaintiff from her obligation to pay rent. The Supreme Court said in In re Edgewood ParkJunior College, Inc., 123 Conn. 74, 77 (1937) that "[a] lease is primarily a conveyance of an interest in land. Its covenants are independent covenants. . . . The independent covenants are in effect separate unilateral obligations." When a tenant abandons the leasehold and refuses to pay rent, as the plaintiff did in the present case, the landlord has the option to re-let the premises and to recover the balance of the unpaid rent less the rent received from the new lessee. SagamoreCorporation v. Willcutt, 120 Conn. 315 (1935). The defendant exercised that option when he rented the premises to another tenant for the months of December 1999 through April of 2000 when he sold the building. He CT Page 1109 received the rent from the new tenant that he would have received from the plaintiff for the aforementioned period of time and counterclaims only for the rent due for September through November of 1999. The evidence supports the counterclaim for rent and under the rationale ofSagamor, supra, the defendant is entitled to retain the $10,500.00 security deposit to cover the rent for the three month period in which the plaintiff refused to pay.
In addition to the three months rent at $3,500.00 per month, the defendant is entitled to recover late fees in the amount of $525.00. The parties' agreement allows the defendant to collect a five percent late fee for each rental payment that is more than ten days overdue. The rent installments due for September, October and November of 1999 are far more than ten days late and the defendant, therefore, may recover the late charges due under the terms of the contract.
The defendant is not, however, entitled to recover the $3,500.00 broker's fee he allegedly paid. The credible evidence shows that the defendant failed to mitigate this claimed element of damages. He was a real estate broker in New Canaan since 1967 and was familiar with the local real estate market. He did not need to employ the services of another broker to find a new tenant because he could have and reasonably should have found a tenant himself. Under the circumstances the court does not find it credible that the defendant used another broker to do what he could have easily done himself. In addition the defendant is not entitled to recover attorney's fees because he has provided no statutory, case law or other justification for receiving such fees.
Finally, the court refuses to award the defendant the statutory interest he seeks pursuant to General Statutes § 37-3a which allows for the recovery of interest in civil actions as damages for the detention of money after it becomes payable. This court has the authority to determine whether to award the interest requested by the defendant. "It is clear that Connecticut case law establishes that prejudgment interest is to be awarded if in the discretion of the trier of fact, equitable considerations deem that it is warranted." Paulus v. LaSala,56 Conn. App. 139, 147, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928,746 A.2d 789 (2000). The defendant in the present case has been in possession of the plaintiff's $10,500.00 security deposit since June 16, 1999 to date, and presumably has held those funds in an interest bearing account. There is credible evidence that the plaintiff stopped paying rent on her erroneous but good faith belief that Crehan and Sullivan had made an agreement on behalf of their respective clients to terminate the lease at the end of August 1999 and relieve the plaintiff of her obligation to pay further rent. In light of the defendant's possession of the security deposit and the plaintiff's subjective beliefs about the CT Page 1110 status of the lease after August 1999, the court finds that it would be inequitable to award the defendant statutory interest as damages.
 CONCLUSION
The court finds against the plaintiff and for the defendant on the plaintiff's breach of lease claim. The court finds for the defendant and against the plaintiff on the defendant's counterclaim for $10,500.00 in damages representing three months rent at $3,500.00 per month. The court also awards the defendant $525.00 in damages representing contractual late fees for the unpaid rent. The court, however, refuses to award to the defendant any attorney's fees or statutory interest. The total amount of damages awarded to the defendant on his counterclaim is $11,025.00.
____________________ White, J.